COMMONWEALTH vs. DANIEL R. ROBERTS.

Suffolk. March 5, 1990. - June 20, 1990.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.

*Arrest. Constitutional Law*, Arrest, Admissions and confessions, Waiver of
    constitutional rights. *Evidence*, Admissions and confessions, Other of-
    fense, Photograph, Flight, Relevancy and materiality, Consciousness of
    guilt. *Practice, Criminal*, Assistance of counsel, Instructions to jury,
    Capital case. *Homicide. Escape. Robbery. Larceny.*

Certain statements to police officers by a defendant charged with murder
    and armed robbery were not rendered inadmissible on the basis that,
    after initially waiving his right to remain silent and making statements
    to the police, his refusal to reply to further questions constituted a reas-
    sertion of his right to remain silent, and that the failure of the officers
    to ask him whether he wanted to stop the interrogation required sup-
    pression of his statements, where the defendant expressed neither an
    unwillingness to continue nor an affirmative request for an attorney.
    [732-734]
On an appeal by a defendant convicted of first degree murder, there was
    no merit to his claims considered under G. L. c. 278, § 33E, that the
    prosecution injected into the trial evidence that the defendant had al-
    ready been convicted of a murder in New York [734-735], that evi-
    dence of his violent behavior during an escape attempt on his way to a
    court appearance was so prejudicial that it outweighed the probative
    value of the evidence of the attempt [735-736], and that he was
    prejudiced by the admission of evidence suggesting that he was a fugi-
    tive from justice [736-737].
Reversal of a defendant's conviction of armed robbery and of first degree
    murder, to the extent based on felony murder, was not required on the
    ground that the judge should have instructed the jury on the lesser in-
    cluded offense of larceny, where the judge raised the issue of a larceny
    instruction with counsel prior to the instructions, and defense counsel
    agreed that such an instruction should not be given; where the defend-
    ant's argument on appeal was inconsistent with his trial strategy seek-
    ing acquittal on the ground of self-defense; and where, since the jury
    apparently rejected the defendant's version of the events, the omission
    of an instruction on larceny presented no substantial risk of a miscar-
    riage of justice. [737-739]

INDICTMENTS found and returned in the Superior Court Department on September 23, 1981.

A motion to suppress evidence was heard by *Sandra L. Hamlin*, J., and the cases were tried before her.

*Dana A. Curhan* for the defendant.

*Thomas J. Mundy, Jr.*, Assistant District Attorney (*Laura J. Burnham*, Assistant District Attorney, with him) for the Commonwealth.

ABRAMS, J. The defendant, Daniel R. Roberts, appeals from convictions of murder in the first degree, and armed robbery. The defendant alleges error in (1) the denial of his motion to suppress; (2) the judge's evidentiary rulings; and (3) the judge's failure to give an instruction on larceny. The defendant also asks that we exercise our power under G. L. c. 278, § 33E, and reduce the verdict to a lesser degree of guilt. We affirm the convictions. We decline to exercise our power under G. L. c. 278, § 33E, in favor of the defendant.

On Tuesday, June 23, 1981, at approximately 10:30 A.M., the victim was found in his apartment bludgeoned to death. The apartment had been ransacked. At about the same time, the defendant was seen driving the victim's automobile in Deerfield, New York. Later that day, the defendant was arrested driving a Mercury Cougar automobile stolen from a third person. The defendant had with him many items of personal property belonging to the victim. The defendant did not deny killing the victim. He claimed that the victim sexually assaulted him and that he killed the victim in self-defense.

There were eight wounds on the victim's head, and his skull was fractured in at least four places. The cause of death was multiple blunt injuries to the head.

1. *Motion to suppress.* After his arrest, the defendant gave two statements to New York State police. Prior to trial, he moved to suppress the statements as involuntary and because there was no knowing, intelligent, and voluntary waiver of rights protected by the warnings required in *Miranda* v. *Ari-*

zona, 384 U.S. 436 (1966).[1] On appeal, the defendant argues only that because he chose not to answer certain questions during interrogation, the officers should have asked him if he wanted to stop the interrogation. He contends that his refusal to reply to certain questions was a reassertion of his right to silence, and that the failure of the officers to ask him whether he wanted to stop the interrogation requires suppression of his statements. We do not agree.

At the suppression hearing, the judge heard testimony from the defendant as well as from the New York State police officers who questioned him. The judge specifically found that the defendant never indicated that he wanted the interrogation to end. The judge found, as to the defendant's first statement, that the defendant was sober and calm, that "he answered all [the] questions that he chose to answer in a very straightforward manner," and that his refusal to answer some questions indicated that "he was alert, in control, and exercising judgment to protect himself." The judge also found, as to the second statement, that he "never asked that the questioning cease because he was too tired or too high, had a headache or the room was too stuffy to continue talking. At no time did he indicate in any way that he would exercise his privilege and remain silent."

"The determination of the weight and credibility of the testimony is the function and responsibility of the judge who saw and heard the witnesses, and not of this court. In such a situation, where subsidiary findings of fact have been made

---

[1]On appeal, the defendant does not argue that his initial waiver of rights protected by the Miranda warnings was invalid, nor does he contend that the initial portion of his statements was involuntary. Thus, any error is deemed waived. See Commonwealth v. Cundriff, 382 Mass. 137, 150 n.22 (1980), cert. denied, 451 U.S. 973 (1981). See also Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 919 (1975). Moreover, the judge, in lengthy and detailed findings of fact, found that the defendant made a knowing, intelligent, and voluntary waiver of rights protected by the Miranda warnings. She also determined that the statements were voluntary. Pursuant to our duty under G. L. c. 278, § 33E, we have reviewed the judge's findings and rulings on voluntariness and on waiver of rights protected by the Miranda warnings. We conclude that the judge's findings are amply supported by the evidence.

by the trial judge, they will be accepted by this court, and we do not substitute our judgment for [the trial judge's], absent clear error." *Commonwealth* v. *Moon*, 380 Mass. 751, 756 (1980). See *Commonwealth* v. *Yesilciman*, 406 Mass. 736, 743 (1990).

"If a defendant who has initially waived his right to remain silent wishes later to cut off questioning, [ ] he must 'indicat[e] in [some] manner' that he is invoking the right he previously waived." *Commonwealth* v. *Bradshaw*, 385 Mass. 244, 265 (1982), quoting *Miranda* v. *Arizona*, 384 U.S. 436, 473-474 (1966). "For the rule of *Miranda* regarding the termination of questioning to apply, there must be either an *expressed* unwillingness to continue or an affirmative request for an attorney" (emphasis supplied). *Commonwealth* v. *Pennellatore*, 392 Mass. 382, 387 (1984). In view of the judge's findings, which were amply supported by the record, there was no error in the denial of the motion.

2. *Evidentiary rulings.* Pursuant to G. L. c. 278, § 33E, the defendant claims that the admission at trial of various items of evidence to which he did not object requires that we reverse his convictions.

a. *The New York murder.* At the time of the trial in Massachusetts, the defendant had been convicted in New York for the murder of the owner of the Mercury Cougar, who was a seventy-five year old woman. The defendant argues that the prosecutor's phrasing of questions to the New York police in terms of "the homicide in Boston" (a procedure agreed to at trial); the questions to the victim's daughter, "What was [your mother's] address?" and "What was your mother's name?"; the absence of the New York victim from the trial; the fact that the New York victim did not call the police; the number of experienced, high-ranking New York officers involved in the investigation; and the fact that some of the New York officers did not know of the homicide in Boston, injected into the trial a substantial amount of evidence that the defendant murdered the owner of the Mercury Cougar. We do not agree.

Indeed, the transcript reveals that the judge and the prosecutor took care to prevent the jury from hearing or seeing anything that could indicate that the defendant had killed the owner of the Mercury Cougar. The prosecutor prepared the witnesses from New York and instructed them to avoid any mention of the New York murder. Written statements from the defendant were redacted to avoid any mention of it. Photographs taken by the New York police were sanitized by cutting out parts of the photographs that depicted the weapon used in the New York murder. The judge also asked journalists who were covering the trial not to print information about the events in New York because of its potentially prejudicial impact. To the extent that the defendant's argument is that the Commonwealth should have stipulated to the facts surrounding the defendant's acquisition of the Mercury Cougar, we reject it. The Commonwealth is "not compelled to stipulate." *Commonwealth v. Nassar*, 351 Mass. 37, 46 (1966). The defendant's argument is frivolous.[2]

b. *Evidence of the defendant's attempted escape.* The Commonwealth introduced evidence that the defendant attempted to escape on his way to a court appearance. Additionally, a search of the defendant's cell at the Charles Street jail revealed a handcuff key in a jar of cold cream. The defendant concedes that an escape attempt is admissible as evidence of consciousness of guilt.[3] *Commonwealth v. Jackson*, 391 Mass. 749, 758 (1984). The defendant claims, however, that the evidence of his violent behavior during the escape

---

[2]We note that, in this portion of the defendant's argument, he refers to evidence, not heard by the jury, introduced at the suppression hearing. Moreover, he fashions his argument by using isolated bits and pieces of testimony. A full reading of the transcript reveals that the judge and the prosecutor were careful to prevent the jurors from hearing anything that would lead them to suspect that the defendant murdered the owner of the Mercury Cougar.

[3]On appeal, the defendant suggests that the Commonwealth should have stipulated to the attempted flight or limited the testimony of the officer. Apart from the fact that this suggestion is made after trial, we note again that the Commonwealth is "not compelled to stipulate." *Commonwealth v. Nassar, supra* at 46.

attempt was so prejudicial that it outweighed the probative value of the evidence of the escape. We disagree. "Whether evidence is relevant to prove an issue raised by the pleadings or an incidental material issue and whether the inflammatory nature of the evidence outweighs its probative value are matters for the discretion of the trial judge. This court will accept a trial judge's conclusion except in the case of palpable error. *Commonwealth* v. *Booker*, 386 Mass. 466, 469-470 (1982), and cases cited." *Commonwealth* v. *Sawyer*, 389 Mass. 686, 700-701 (1983).[4]

c. *Evidence indicating that the defendant was a fugitive.* The defendant asserts that there is a substantial likelihood of a miscarriage of justice on the conviction of murder in the first degree because the judge admitted evidence suggesting that he was a fugitive from justice. In particular, the defendant argues that the judge should have redacted his statement that he was "thinking about getting away from the State of Oklahoma." We do not agree. That statement is innocuous and in no way implies that the defendant was a fugitive.[5]

The defendant also argues that the fact that he registered under an assumed name at the YMCA prior to the crime should not have been admitted. The defendant is correct. Nevertheless, in light of the fact that the defendant admitted giving the police a false name when arrested, admitted lying to the police, and admitted to "trashing" the victim's apart-

---

[4] The defendant concedes that this is our rule even when, as here, the "escape attempt took place years after the crime charged." See *Commonwealth* v. *Sawyer, supra* at 700. Nonetheless, without presenting any argument or citation on the issue, he urges us to reconsider our rule with respect to consciousness of guilt, especially attempts to escape which occur long after the crime. This argument is not sufficiently developed in the brief to warrant discussion. See Mass. R. A. P. 16 (a) (4). To the extent that we consider whether there was a substantial likelihood of a miscarriage of justice on the conviction of murder in the first degree as a result of the admission of the evidence of an attempted escape because of the time lag between the crime and the attempted escape, we conclude that there was no substantial likelihood of a miscarriage of justice.

[5] The judge struck from the top of the defendant's statement the fact that the defendant gave his address as the Oklahoma State Penitentiary and his occupation as "inmate."

ment, the error is nonprejudicial. Certainly as to the conviction of murder in the first degree it does not create a substantial likelihood of a miscarriage of justice.

3. *Failure to instruct on larceny.* The defendant asks that we reverse his conviction for armed robbery and for only that portion of the conviction of murder in the first degree based on felony murder.[6] He asserts that the judge should have instructed on the lesser-included offense of larceny. The short answer is that the judge raised the issue of a larceny instruction with counsel prior to the instructions,[7] and defense counsel agreed that such an instruction should not be given. "The theory of law on which by assent a case is tried cannot be disregarded when the case comes before an appellate court for review . . . ." *Santa Maria* v. *Trotto*, 297 Mass. 442, 447 (1937). See *Commonwealth* v. *Fernette*, 398 Mass. 658 (1986). Further, our rule is that "[w]hen the evidence permits a finding of a lesser included offense, a judge must, *upon request*, instruct the jury on the possibility of conviction of the lesser crime" (emphasis supplied). *Commonwealth* v. *Hobbs*, 385 Mass. 863, 871 (1982). There was no such request. Indeed, the defendant's trial strategy was to present an all-or-nothing choice to the jury and to claim that he was entitled to a not guilty verdict based on self-defense from a sexual assault.

On appeal, the defendant does not argue that there was error in the judge's instructions on armed robbery or that there was insufficient evidence to permit the jury to infer that the defendant had committed armed robbery.[8] The argument

---

[6] The jurors' verdict also was based on deliberate premeditation and extreme atrocity or cruelty.

[7] At trial, the Commonwealth acknowledged that the defendant technically was entitled to an instruction on larceny but not larceny and second degree murder.

[8] The defendant argues that we should reverse so much of his conviction for murder in the first degree as was based on felony-murder because the evidence was sufficient only for larceny, not for felony-murder based on armed robbery. Pursuant to our duty under G. L. c. 278, § 33E, we consider whether the evidence was sufficient to permit the jurors to consider felony-murder based on armed robbery. We have reviewed the evidence

on appeal is simply that the jurors might have been "reluc-
tant to acquit simply because they were uncertain whether
the defendant formed the intent to steal just after the killing
rather than just before." This argument is inconsistent with

---

presented by the Commonwealth through the close of its case, in the light
most favorable to the Commonwealth. *Commonwealth* v. *Latimore*, 378
Mass. 671, 676-678 (1979). *Commonwealth* v. *Kelley*, 370 Mass. 147, 150
(1976). There was sufficient evidence to permit the jury to infer that the
defendant committed the murder in the course of the armed robbery. The
Commonwealth's theory was that the defendant formulated an intent to
rob the victim, approached the victim while the victim was seated in a
chair, and struck him with a ball peen hammer. The victim then fell, over-
turning the chair on which he was seated. Pictures indicated that the
apartment was thoroughly ransacked and drawers searched but that the
chair on which the Commonwealth theorized that the victim was sitting
was the only piece of furniture overturned in the apartment; there was no
evidence of a struggle. Pictures showing that the Sunday newspaper was in
the apartment discredited the defendant's statements as to the time the
crime occurred. The pictures show the victim as fully clothed, which dis-
credits the defendant's version of the events. Last, when he was arrested,
the defendant had many small items belonging to the victim. The Com-
monwealth produced evidence that the defendant needed funds at the time
of the crime. The defendant's theory, presented in his statements to the
New York police, which the Commonwealth offered, was that the defend-
ant, lying on the floor, awoke from sleep to find the victim sexually assault-
ing him; that the defendant struck and killed the victim with a shoe tree or
a shoe stretcher; and that he then decided to take the victim's personal
property.

The Commonwealth produced evidence, through the testimony of the
medical examiner, tending to support its theory and discredit the defend-
ant's theory. The medical examiner testified that the victim's body, which
was fully clothed, revealed no defensive injuries, and that the pattern of
blood smeared on the wall by the body was consistent with the Common-
wealth's theory. While cross-examining the medical examiner, defense
counsel elicited the damaging testimony that, while the blood smears also
were consistent with the defendant's theory that the victim was lying on
the floor at the time of the first blow, the victim would have to "have come
up and down [even after the first blow] here in order to produce the
smears on the wall." He opined that that was very improbable. Moreover,
the medical examiner opined that the nature of many of the wounds was
inconsistent with the defense theory that the victim was prone, with his
head between the defendant's legs.

The Commonwealth's theory did not deteriorate after the defense's pres-
entation. See *Commonwealth* v. *Amazeen*, 375 Mass. 73, 80 n.5 (1978).
Indeed, cross-examination of the defendant elicited numerous glaring in-
consistencies in the defendant's version of the events.

the defendant's trial strategy. The defendant wanted an acquittal, not a conviction of a lesser-included crime. The instructions, now requested after the fact, might have undermined his tactical decision to seek an acquittal on the ground of self-defense. See *Commonwealth* v. *Doucette*, 391 Mass. 443, 458 (1984); *Reddick* v. *Commonwealth*, 381 Mass. 398, 407 (1980). Last, because it is clear that the jury rejected the defendant's version of the events, there was no substantial risk of a miscarriage of justice for the failure to instruct the jurors on larceny. See *Commonwealth* v. *Oakes, ante* 92, 94-95 (1990), quoting *Commonwealth* v. *Pares-Ramirez*, 400 Mass. 604, 609 (1987).

4. *Relief pursuant to G. L. c. 278, § 33E.* We have reviewed the transcript pursuant to G. L. c. 278, § 33E. We see no reason for a reduction in the verdict to a verdict of a lesser degree of guilt or for a new trial.[9]

*Judgments affirmed.*

---

[9] On appeal, the defendant has not argued that he is entitled to a new trial based on our decisions in *Commonwealth* v. *Glass*, 401 Mass. 799 (1988); *Commonwealth* v. *Grey*, 399 Mass. 469 (1987); and *Commonwealth* v. *Henson*, 394 Mass. 584 (1985). Therefore, that argument is deemed waived. See *Commonwealth* v. *Cundriff*, 382 Mass. 137, 150 n.22 (1980). See also Mass. R. A. P. 16 (a) (4). Nevertheless, pursuant to G. L. c. 278, § 33E, we consider whether those cases have any application to this case. At trial, the defendant's tactic was to claim that he was enraged by the victim's sexual assault on him, and he was, therefore, entitled to a verdict of not guilty based on self-defense. There was testimony from the defendant that between approximately 11 P.M. and midnight, he and the victim smoked a "joint" (marihuana cigarette) treated with PCP ("angel dust"), that he drank a glass of wine, and that he took some "Preludins" (diet pills). The defendant stated that the "Preludins" did not prevent him "from going into a sound sleep." The defendant stated that he was awakened by the sexual assault, and that he started hitting the victim and trying to push him away. At that time, a "feeling of anger and rage" came over him and he kept hitting the victim. The defendant claimed later that the two statements were involuntary because, among other reasons, he was under the influence of drugs and alcohol. The defendant, however, consistently claimed that the killing itself was the product of his rage at being sexually assaulted. He never claimed mental impairment or intoxication at the time of the sexual assault. There is, therefore, no reason to grant the defendant any relief based on *Glass*, *Grey*, and *Henson.* To the extent that the judge instructed the jurors on intoxication at the time of the offense, the instruction was more favorable to the defendant than was required by the evidence.