COMMONWEALTH *vs.* JERMAINE BERRY.

Suffolk. February 11, 2000. - May 3, 2000.

Present: MARSHALL, C.J., ABRAMS, LYNCH, IRELAND, & COWIN, JJ.

*Homicide. Joint Enterprise. Evidence,* Joint enterprise, Self-defense. *Practice, Criminal,* Required finding, Instructions to jury, Lesser included offense. *Self-Defense.*

At the trial of an indictment for murder in the second degree, the judge should have allowed the defendant's motion for a required finding of not guilty on the theory of joint venture liability, where the Commonwealth's evidence was not sufficient to warrant a rational jury to find beyond a reasonable doubt that the defendant was a joint venturer [330-333]; in circumstances in which the case was submitted on theories of both individual and joint venture culpability and the jury returned a general verdict convicting the defendant of manslaughter, a new trial was required [333-334].

Evidence at the trial of an indictment for murder in the second degree warranted the judge's instructing the jury on the lesser included offense of voluntary manslaughter based on heat of passion induced by reasonable provocation [334-335], but the evidence did not warrant a similar instruction based on use of excessive force in self-defense, and the judge erred in so instructing [335-336]; in circumstances in which the judgment was reversed on other grounds, the defendant could not be retried on the latter theory [336].

In the circumstances of a criminal case in which neither the Commonwealth nor the defendant requests an instruction that is warranted by the evidence on a lesser included offense, and in which the element differentiating the offense is in dispute, the judge may give the instruction, despite objection by both the Commonwealth and the defendant. [336-338]

INDICTMENT found and returned in the Superior Court Department on October 17, 1994.

The case was tried before *Barbara J. Rouse,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*David B. Poole* for the defendant.

*Rosemary Daly,* Assistant District Attorney, for the Commonwealth.

COWIN, J. Jermaine Berry was indicted on a charge of murder

in the second degree in a stabbing death. At trial, the Commonwealth proceeded against Berry for causing the death of the victim either individually or as a joint venturer. The jury convicted Berry of voluntary manslaughter. The verdict did not specify whether the jury found the defendant guilty individually or as a joint venturer. Berry appealed and the Appeals Court affirmed the conviction. *Commonwealth* v. *Berry*, 47 Mass. App. Ct. 24 (1999).

We granted Berry's application for further appellate review. Although Berry was charged with murder in the second degree, the judge sua sponte charged on voluntary manslaughter and the defendant was convicted of this lesser included offense. Berry seeks reversal of his conviction claiming (1) that he was entitled to a required finding of not guilty on the theory of joint venture liability because there was insufficient evidence at the close of the Commonwealth's case-in-chief for a conviction based on such liability; (2) that the evidence was inadequate to support a manslaughter conviction and therefore the judge should not have submitted that issue to the jury; (3) that the judge erred in giving a manslaughter instruction over the defendant's objection when the Commonwealth did not request the instruction; (4) that the manslaughter instruction given was erroneous; and (5) that prejudicial testimony was improperly admitted.[1] There must be a new trial.

*The Commonwealth's case.* A medical examiner testified that the victim died as a result of a stab wound to the chest. According to the Commonwealth's witnesses, the events leading up to the stabbing were as follows. On the night of August 27, 1994, at approximately 10 P.M. the victim and his brother, Sean Mack (Sean), went to a social club in the Mattapan section of Boston. Inside the club, the victim argued with someone. At 1:45 A.M., security personnel escorted the victim from the club and refused to allow him to return. The victim waited outside the club until the 2 A.M. closing and gave his blazer, shirt, and cellular telephone to his friend, Renée Bailey. The victim was extremely angry and was preparing to fight with the person with whom he had argued. However, that other person never emerged from the club.

As the victim waited in front of the club, a group of people, including the defendant, approached from the opposite side of

---

[1]Given our conclusion, it is unnecessary to address the defendant's last two contentions.

the street. One of the members of the approaching group was "looking" at the victim; various people from the two groups, including the defendant and the victim, exchanged words; then the defendant and the victim began to fight. The defendant "charg[ed]" at the victim and Anton Warren, a friend of the victim, tried to stop the fight. Eventually, Warren left the victim's side to help Sean, who was involved in a fight with a person Sean believed to be the defendant's friend. The fight moved down the street as a crowd gathered. Police officers saw three or four separate groups fighting.[2]

Bailey observed the defendant fighting with the victim and heard Warren "tell him [the man fighting with the victim] to put the knife away, that he didn't need it." Bailey then noticed "a shiny object" in the defendant's hand. About one minute later, Bailey saw the defendant throw his shirt and spit on the victim, who was on the ground bleeding. Sean saw the victim on the ground with blood on his shirt.

Both Sean and Bailey saw only the defendant fighting with the victim. When police arrived, Sean directed them to the defendant. After his arrest, the defendant told the officers that his name was "Barry" rather than Berry. Blood consistent with the victim's blood type and inconsistent with the defendant's blood type was found on the defendant's shorts and sun visor and on a knife found at the scene.

Sean testified that he did not see a knife or any other weapon during the altercation and did not immediately realize that his brother had been stabbed. However, a police officer recalled that Sean was hysterical and had identified the defendant as having a knife and as "one of the two that were involved in the stabbing." Another officer stated that Sean pointed to the defendant as "one of the ones who stabbed my brother."[3]

*The defendant's case.* Four defense witnesses testified that after the fight Isaac Wilkerson, the defendant's cousin, admitted stabbing the victim. Nevertheless, the defendant stated on the stand that he never saw Wilkerson with a knife and that he (the defendant) had told the police that Wilkerson had not stabbed anyone. The defendant testified that, accompanied by his friend Kenneth McFadden and Wilkerson, he went to the club seeking the location of an "after hours party." The defendant testified

---

[2]Testimony from one police officer estimated the crowd at one hundred people; a second officer estimated twenty-five to thirty people.

[3]There was no objection to this testimony.

that he and the victim established eye contact outside the club, insulted one another, and tried "to get at one another." Someone grabbed the defendant's shirt[4]; it was "torn down the seam" and the defendant "came out of it." The defendant further stated that the victim hit someone in the eye and eventually the defendant hit the victim; the victim charged the defendant and the defendant ducked and swept the victim's legs out from under him, causing the victim to fall. By this point, friends of the defendant and the victim, as well as onlookers, had become involved in the melee, with a number of different fights breaking out. The defendant agreed that he could have "walked away from [the fight] at any time."

The defendant admitted that he was the last person to have contact with the victim and that he threw his shirt at the victim after the victim was on the ground because he was angry that his shirt was torn, but the defendant denied spitting on the victim. The defendant also denied stabbing the victim, having a weapon, knowing that anyone in the area had a knife, or hearing Warren say, "put the knife away."

Wilkerson admitted involvement in the altercation, but denied stabbing the victim. Rather, he claimed that he had tried to break up the fight and that the defendant had been the last person to fight with the victim before the victim fell to the ground. McFadden also admitted that he was involved in the fighting but denied that he was the stabber. McFadden said that the victim swung at the defendant first and that then he, McFadden, swung at the victim. McFadden next tried to get the defendant and Wilkerson to leave but someone lunged at McFadden with a beer bottle. That person handed the bottle to another person who used it to hit the defendant in the chest.

Warren[5] testified that he did not see the defendant with a knife, but that another person, whom he thought was with the defendant, was opening and closing a knife. With the defendant within earshot, Warren yelled to the person with the knife to put it away. After briefly leaving the victim's side to assist Sean, Warren turned back toward the victim in time to see him fall to the ground and see the defendant throw his shirt on the victim and spit. The person Warren had seen with the knife had disappeared.

---

[4]The implication from the defendant's testimony is that the person who grabbed the defendant's shirt was someone other than the victim.

[5]Although Warren was a friend of the victim, he was called as a defense witness.

1. *Sufficiency of the evidence of joint venture.* At the conclusion of the Commonwealth's case, and again at the conclusion of all the evidence, Berry moved for a required finding of not guilty on the theory of joint venture liability. The judge denied the motions and later submitted the case to the jury on theories of both individual and joint venture culpability despite the defendant's objection to any joint venture instruction. The jury returned a general verdict convicting the defendant of manslaughter. The defendant argues that the evidence at the close of the Commonwealth's case did not support the theory of joint venture liability. We agree.

For a conviction of manslaughter by joint venture, the Commonwealth must prove beyond a reasonable doubt that the defendant was (1) present at the scene of the crime; (2) with knowledge that another intended to commit the crime or with intent to commit a crime; and (3) by agreement was willing and available to help the other if necessary. *Commonwealth* v. *Green*, 420 Mass. 771, 779 (1995). *Commonwealth* v. *Longo*, 402 Mass. 482, 486 (1988). Here, the Commonwealth must prove that the defendant shared the mental state required for the crime of manslaughter, and that he satisfied the other elements of the test for joint venturer. *Commonwealth* v. *Cunningham*, 405 Mass. 646, 659 (1989), citing *Commonwealth* v. *Longo*, *supra* at 486-487.

For purposes of a motion for a required finding, filed at the close of the Commonwealth's case, whether the Commonwealth has sustained its burden of presenting sufficient evidence to support a verdict based upon joint venture is determined by an examination of the evidence at the close of the Commonwealth's case-in-chief. See *Commonwealth* v. *Lydon*, 413 Mass. 309, 312 (1992) (in considering decision to deny motion for required finding filed at close of Commonwealth's case, only evidence presented by Commonwealth during case-in-chief considered). See also *Commonwealth* v. *Kelley*, 370 Mass. 147, 150 n.1 (1976) (defendant's rights became fixed when Commonwealth rested and defendant's motions for directed verdicts had been denied, even though defendant presented evidence thereafter).

*Commonwealth* v. *Podlaski*, 377 Mass. 339 (1979), on which the Appeals Court relied, *Commonwealth* v. *Berry*, 47 Mass. App. Ct. 24, 31 n.10 (1999), is not to the contrary. In *Podlaski*, the defendant claimed that his case should not have been submitted to the jury on either the theory of deliberately premeditated

murder or murder with extreme atrocity or cruelty. *Commonwealth* v. *Podlaski, supra* at 344. We held that the judge had not erred in denying a *generally phrased* motion for directed verdict (now denominated a motion for required finding of not guilty, Mass. R. Crim. P. 25 [b], 378 Mass. 896 [1979]) when one of the two theories justified submission of the case to the jury. We said that a *generally phrased* motion for directed verdict does not preserve for review the denial of the motion on a specific theory of liability when there was sufficient evidence to withstand the motion on an alternative theory. *Id.* at 344 n.5. The *Podlaski* case did *not* suggest that a motion for a required finding on a specific theory of liability may be denied improperly at the close of the Commonwealth's case and did *not* state that "[i]f there was any basis other than [that theory] on which the case could have been submitted to the jury, there is no directed verdict issue on appeal." *Commonwealth* v. *Berry, supra.* Following *Podlaski,* we have held that when the defendant submits a *generally expressed* motion for a required finding of not guilty in a murder case, the case may be submitted to the jury as long as one theory is supported by the evidence. See *Commonwealth* v. *Glass,* 401 Mass. 799, 802 (1988) (although defendant claimed evidence did not warrant submitting case to jury on question of murder based on extreme atrocity or cruelty, generally expressed motion for required finding properly denied where evidence warranted submitting case to jury on deliberately premeditated murder theory). See also *Commonwealth* v. *Alvarez,* 422 Mass. 198, 212 n.14 (1996).

The judge's action on a motion for a required finding based on a specific theory must be measured by the state of the evidence when the Commonwealth rests, and if such evidence is lacking, the defendant is entitled to a required finding as to that theory. The prerequisite for the application of this rule, however, is that the defendant specify the basis for his motion to the judge, i.e., that he is not seeking a required finding in general, but only as to a specific theory which is not supported by the Commonwealth's evidence. On appeal, the reviewing court will then examine the Commonwealth's evidence on that particular issue at the close of the Commonwealth's case. See *Commonwealth* v. *Lydon, supra* at 312; *Commonwealth* v. *Kelley, supra* at 150.

Here the defendant's motion was not a generally expressed motion for a required finding of not guilty. He specifically

argued at the hearing on the motion at the close of the Commonwealth's case that the Commonwealth had not presented sufficient evidence either as to individual or joint venture liability. He thus presented the issue of the sufficiency of the evidence for joint venture liability at the close of the Commonwealth's case and preserved the issue for review, distinguishing this case from *Commonwealth* v. *Podalski, supra* at 344 n.5.

Accordingly, we must consider only the evidence presented during the Commonwealth's case-in-chief in deciding the propriety of the denial of the defendant's motion for a required finding as to joint venture liability.[6] We must consider "whether the evidence [presented at the time the Commonwealth rested] considered in the light most favorable to the Commonwealth, was sufficient to satisfy a rational trier of fact of the essential elements of the crime beyond a reasonable doubt." *Commonwealth* v. *Coonan*, 428 Mass. 823, 828 (1999). Reasonable and possible inferences may be drawn from largely circumstantial evidence. *Commonwealth* v. *Martino*, 412 Mass. 267, 272 (1992), and cases cited.

The Commonwealth failed to offer sufficient evidence for a rational jury to find beyond a reasonable doubt that the defendant was a joint venturer. The Commonwealth needed to present evidence that a principal other than the defendant committed the stabbing. The only evidence of such liability introduced during the Commonwealth's case-in-chief was hearsay evidence from a witness to the incident, Renée Bailey, and from two police officers. Bailey testified that she heard Anton Warren tell "him" (the defendant) to put away the knife while the defendant was apparently within earshot. Bailey further testified that at about the same time that she heard Warren, she saw a shiny object (never identified as a knife) in the defendant's hand.

Viewing the evidence in the light most favorable to the Commonwealth, a reasonable inference can be drawn that the shiny

---

[6]The Appeals Court, improperly relying on *Commonwealth* v. *Podlaski*, 377 Mass. 339 (1996), considered *all* the evidence in the case and concluded that the motion for required finding was properly denied. *Commonwealth* v. *Berry*, 47 Mass. App. Ct. 24, 31 n.10 (1999). However, unlike *Podlaski*, this *is* a case in which the focus of appellate review is whether the motion for a required finding was properly denied. The distinction is critical as in this case, unlike most cases, there was additional evidence of joint venture during the defendant's case.

object in the defendant's hand was a knife and that the statement to "put [it] away" was directed at and heard by the defendant. Drawing on those inferences, there is evidence to warrant individual, but not joint venture, liability. The Commonwealth presented no evidence that anyone other than the defendant possessed a knife. The fact that some witnesses did not see a knife in the hand of the defendant is not the equivalent of evidence that anyone else with whom the defendant was acting in concert possessed a knife. Cf. *Commonwealth* v. *Gilliard*, 36 Mass. App. Ct. 183, 189-190, 191 & n.4 (1994), *S.C.*, 46 Mass. App. Ct. 348 (1999).

The only other testimony supporting joint venture liability presented during the Commonwealth's case were statements of two police officers that, shortly after the fight, Sean, the victim's brother, identified the defendant to these officers as one of the "two . . . involved in the stabbing."[7] This evidence, even viewed in the light most favorable to the Commonwealth, is insufficient to establish that the defendant acted in concert with another. A rational jury would not be warranted in inferring that the defendant was at the scene as a joint venturer. "Such an inference would be speculative and highly unreasonable . . . ." *Commonwealth* v. *Green*, 420 Mass. 771, 780 (1995). Where the issue was specifically raised, the motion for a required finding of not guilty as to joint venture liability should have been allowed to that extent.

Because that motion should have been allowed and the jury did not differentiate in their verdict form between individual and joint venture liability, the possibility that the verdict was based on a theory for which the Commonwealth failed to offer sufficient evidence during its case-in-chief (where this objection was raised by motion for required finding) requires that we set aside the verdict.[8] See *Commonwealth* v. *Flynn*, 420 Mass. 810, 818 (1995) (verdict of manslaughter legally unsupportable on theory of individual liability; with question whether jury adopted this theory or joint venture liability, conviction reversed and verdict set aside); *Commonwealth* v. *Green, supra* at 779-781 (setting aside verdicts where evidence did not warrant judge's

---

[7]However, Sean previously testified that he had never said that to the police.

[8]Although it is not essential to our decision, we note that the jury returned a verdict shortly after requesting further instruction on the meaning of joint venture.

joint venture instruction and jury may have relied on that theory).

2. *Voluntary manslaughter instruction.* The defendant claims that the judge erred in instructing the jury on voluntary manslaughter based on the mitigating circumstances of heat of passion on reasonable provocation and excessive use of force in self-defense. He claims that there was no evidence that Berry acted in response to adequate provocation and there was no evidence that he acted in self-defense with excessive force. The defendant preserved these issues by objecting to the submission of the case to the jury on a theory of voluntary manslaughter, and we consider them because they are relevant to any retrial of this case. Thus, we focus here on the judge's decision to instruct the jury on the lesser included offense of manslaughter.[9]

"If any view of the evidence . . . would permit a verdict of manslaughter rather than murder, a manslaughter charge should be given." *Commonwealth* v. *Brooks*, 422 Mass. 574, 578 (1996). One of the mitigating circumstances that would render the crime a voluntary "manslaughter . . . [is] a killing from a sudden transport of passion or heat of blood, upon a reasonable provocation and without malice, or upon sudden combat." *Commonwealth* v. *Walden*, 380 Mass. 724, 727 (1980), quoting *Commonwealth* v. *Soaris*, 275 Mass. 291, 299 (1931). "In order for a jury to find that a 'defendant formed an intent to kill in a transport of passion or in the heat of blood, . . . [t]here must be evidence that would warrant a reasonable doubt that something happened [i.e., provocation] which would have been likely to produce in an ordinary person such a state of passion, anger, fear, fright, or nervous excitement as would eclipse his capacity for reflection or restraint, and that what happened actually did produce such a state of mind in the defendant.' " *Commonwealth* v. *Amaral*, 389 Mass. 184, 188 (1983), quoting *Commonwealth* v. *Walden*, supra at 727-728. *Commonwealth* v. *Pitts*, 403 Mass. 665, 667 (1989).

The provocation must induce in the defendant a "heat of passion" and then the unlawful act (the killing) must be caused by the provocation. There was evidence that would have warranted

---

[9]This decision was important to the defendant as he apparently was employing an "all-or-nothing" strategy, i.e., that the jury would not convict him of murder in the second degree, and with no other option before them, would return a verdict of not guilty. See *Commonwealth* v. *Woodward*, 427 Mass. 659, 662-663 n.6 (1998).

the jury in finding the following. The victim and the defendant were eyeing each other outside the club as the two groups approached each other; the victim and the defendant exchanged words, insulted one another, and tried "to get at one another." The victim charged the defendant and swung at him with his bare hands; and finally, the victim hit the defendant with a beer bottle. The jury could have determined that, as a result of this escalating hostility, the defendant lashed out at the victim in a heat of passion, provoked by the above circumstances. The evidence viewed in this light warranted a voluntary manslaughter instruction based on heat of passion induced by reasonable provocation.

The defendant contends further that the judge erred in instructing the jury on the mitigating circumstance of excessive force in self-defense because there was no evidence of excessive force in self-defense. Before a judge may instruct on this theory, the defendant must be entitled to act in self-defense. *Commonwealth* v. *Curtis*, 417 Mass. 619, 632 n.11 (1994). The right to self-defense does not arise unless (1) the defendant took every opportunity to avoid combat, *Commonwealth* v. *Niemic*, 427 Mass. 718, 722 (1998), and (2) the defendant had "reasonable ground to believe, and actually did believe that he was in imminent danger of death or serious bodily harm." *Commonwealth* v. *Carrion*, 407 Mass. 263, 268 (1990), quoting *Commonwealth* v. *Harrington*, 379 Mass. 446, 450 (1980). Here the evidence was clear that the defendant did not take advantage of every opportunity to avoid combat. *Commonwealth* v. *Bertrand*, 385 Mass. 356, 362 (1982), and cases cited. By his own testimony, the defendant did not even try to avoid the fight with the victim. The defendant said that he could have walked away from the fighting at any time and this testimony was unrebutted. Even if the defendant's own testimony is disbelieved, the fight was on a public street and at least at some point he had adequate means of escape.[10] Indeed, most witnesses to the fight (including the defendant) indicated that the victim was being restrained at various times by his own friend or friends (thus permitting the defendant an opportunity to escape). The uncontested evidence is that the defendant continued to pursue the victim after the two had been separated by "peacemakers." See *Commonwealth* v. *Pike*, 428 Mass. 393, 398-399 (1998) (defendant not entitled to self-defense instruction where, although fight oc-

---

[10]A large number of spectators gathered after the fight had begun.

curred on highway shoulder between speeding traffic and steep embankment, defendant, who testified at trial, did not testify that he attempted to retreat). Because there was insufficient evidence of self-defense,[11] we do not reach the question of excessive force. An instruction on voluntary manslaughter based on the use of excessive force in self-defense was error. See *Commonwealth* v. *Caine*, 366 Mass. 366, 374-375 (1974) ("error to give [a manslaughter] instruction where . . . no supporting evidence of the commission of that crime").

As the defendant was convicted of voluntary manslaughter and a basis for such a verdict is found only in the mitigating circumstance of heat of passion on reasonable provocation, the defendant may be retried only on that theory.[12] See *Commonwealth* v. *Fickett*, 403 Mass. 194, 199 n.4 (1988) (when evidence insufficient to support particular theory, defendant may not be retried on theory that should not have been given to jury at first trial).[13]

3. *Instructions on manslaughter on the judge's own initiative.* We have determined that, based on the evidence, a manslaughter instruction was warranted on the mitigating circumstance of heat of passion induced by reasonable provocation. The defendant contends that the judge erred in giving the manslaughter instruction over his objection and in the absence of a Commonwealth request for such an instruction. We start with the proposition that, "[e]ven when evidence is introduced that would justify conviction for a lesser included offense, the defendant is not entitled to an instruction thereupon unless the

---

[11]There was also no evidence the defendant believed he was in imminent danger of death or serious injury. Although there was testimony that someone struck the defendant with a beer bottle, there was no evidence that the bottle was broken or jagged. Further, there was no basis to infer that the victim or anyone else continued to threaten the defendant with it, or that anyone other than the stabber had a weapon. The defendant's own testimony directly contradicted any suggestion that he believed he was in imminent danger of death or serious bodily harm.

[12]Although it does not affect our resolution of this case (because of our disposition of the joint venture issue, see Part 1, *supra*), we reiterate that "in a case where the evidence would warrant a guilty verdict of manslaughter or some other crime on more than one theory, a guilty verdict should state the theory on which guilt was found." *Commonwealth* v. *Accetta*, 422 Mass. 642, 646-647 (1996).

[13]Of course, the defendant may not be retried for murder in the second degree since he was acquitted of that charge by the jury's manslaughter verdict. Cf. *Commonwealth* v. *Preston*, 393 Mass. 318, 325 n.8 (1984).

proof on the 'elements differentiating the two crimes is suf-
ficiently in dispute so that the jury may consistently find the
defendant innocent of the greater and guilty of the lesser
included offense.' " *Commonwealth* v. *Egerton*, 396 Mass. 499,
504 (1986), quoting *United States* v. *Brischetto*, 538 F.2d 208,
209 (8th Cir. 1976). See *Commonwealth* v. *Pearce*, 43 Mass.
App. Ct. 78, 81 (1997), *S.C.*, 427 Mass. 642 (1998) ("the jury
must be presented with some rational basis on which to reject
the Commonwealth's proof on one or more of the requisite ele-
ments of the greater offense"). *Commonwealth* v. *Souza*, 428
Mass. 478, 494 (1998).

Concerning the specific circumstances on which a lesser
included offense instruction is to be given, our cases have stated
repeatedly that, "[w]hen the evidence permits a finding of a
lesser included offense, a judge must, *upon request*, instruct the
jury on the possibility of conviction of the lesser crime"
(emphasis supplied). *Commonwealth* v. *Woodward*, 427 Mass.
659, 662-663 (1998), quoting *Commonwealth* v. *Gould*, 413
Mass. 707, 715 (1992). See *Commonwealth* v. *Pitts*, *supra* at
667 n.2, quoting *Commonwealth* v. *Walden*, *supra* at 726 ("we
note that the fact that a defendant denies committing the
homicide 'does not relieve the judge from giving a manslaughter
charge, on request, where the evidence would warrant convic-
tion of that lesser crime' "). "We have never limited this rule to
requests made by the defendant, nor have we ever held that the
Commonwealth is not entitled, evidence permitting, to such an
instruction on request." *Commonwealth* v. *Woodward*, *supra* at
663.

The present case presents a slightly different factual situation:
the judge, concerned that the evidence might warrant a
manslaughter instruction, thoughtfully raised the issue sua
sponte, despite the fact that neither side requested such an
instruction.[14] The Commonwealth then agreed to the instruction,
but the defendant objected. Although *Commonwealth* v. *Roberts*,
407 Mass. 731, 737 (1990), appears to hold that in certain
circumstances a defendant may employ an "all-or-nothing"
strategy, we have made it clear since that case that the defendant
cannot control this decision where the evidence would warrant

---

[14]The defendant did not present a self-defense theory to the jury; he never
contended that self-defense played any role in the case. Nor did he claim that
he was provoked into attacking the victim. His entire defense was that,
although he fought with the victim, he was not the stabber and had been
wrongly accused.

a finding of guilty of the lesser included offense and the Commonwealth requests such an instruction.[15] See *Commonwealth* v. *Woodward, supra* at 663 n.7. In the *Woodward* case, we stated that "[t]he *Roberts* case, *supra*, does *not* stand for the proposition . . . that the defendant has an unqualified right to elect, evidence permitting, whether or not the jury receive a lesser included instruction" (emphasis supplied), and we specifically "disavow[ed] dictum that may suggest that the judge must honor, in the face of the Commonwealth's objection, the defendant's choice not to have a manslaughter instruction." *Id.* We have also said that the defendant does not have an absolute right to make tactical decisions that determine which theories of criminal liability are submitted to the jury and have affirmed a judge's allowance of the Commonwealth's request for a lesser included offense instruction over the defendants' objection. See *Commonwealth* v. *Thayer*, 418 Mass. 130, 132-133 (1994).

The necessary corollary of this is that when the evidence would warrant a conviction of the lesser included offense and the element differentiating the offenses is in dispute, the judge may give the instruction despite objection by both the Commonwealth and the defendant. If the defendant alone cannot control which theories of criminal liability are submitted to the jury, both sides should not be able to do so. If, however, in these circumstances (either no request at all or objection by both sides) the judge chooses to give such an instruction, such action will not be reversed on appeal, absent a substantial risk of a miscarriage of justice. On the facts of this case, the judge was entitled to raise with counsel whether to give a manslaughter instruction, in view of her determination that the evidence warranted such an instruction, but she was not required to do so.[16]

4. The judgment is reversed, the verdict is set aside, and the

[15]The distinguishing factor is that, in *Commonwealth* v. *Roberts*, 407 Mass. 731, 737 (1990), the Commonwealth did *not* request an instruction on the lesser included offense (larceny). We held that a judge is not *required* to charge on the lesser crime in the absence of a request.

[16]Sua sponte instructions on lesser included offenses are required in some States. See, e.g., *People* v. *Wickersham*, 32 Cal. 3d 307, 334-335 (1982); *State* v. *Coward*, 54 N.C. App. 488, 489-490 (1981); *Barnett* v. *State*, 560 P.2d 997, 1001 (Okla. Crim. App. 1977); *Strader* v. *State*, 210 Tenn. 669, 678-679 (1962) (statutory requirement). In other States sua sponte instructions are required in murder or death penalty cases. See, e.g., *People* v. *Stephens*, 416 Mich. 252, 261 (1982); *State* v. *Leinweber*, 303 Minn. 414, 421 (1975); *State* v. *Miller*, 2 Or. App. 353, 358 (1970). In many States, however, judges are not

case is remanded to the Superior Court for a new trial for manslaughter on the theory of heat of passion on reasonable provocation.

*So ordered.*

---

required to give such instructions sua sponte. See, e.g., *State* v. *Sheppard*, 253 Mont. 118, 123 (1992), and cases cited.