COMMONWEALTH *vs.* ROBERT TIRADO.

No. 04-P-894.

Bristol. October 6, 2005. - February 24, 2006.

Present: GRASSO, COWIN, & GREEN, JJ.

*Homicide. Practice, Criminal,* Instructions to jury. *Self-Defense.*

At a murder trial, the judge did not err in denying the defendant's request for
a jury instruction on self-defense, where there was no view of the evidence
that could have permitted the jury to find that the defendant had acted due
to a reasonable fear of an imminent danger of death or serious bodily harm
(or even due to a reasonable concern for his personal safety), or that the
defendant had had no practical opportunity to avoid the encounter.
[574-579]

INDICTMENT found and returned in the Superior Court Department on March 14, 2001.

The case was tried before *E. Susan Garsh,* J.

*Deirdre Lee Thurber* for the defendant.

*Tara Blackman,* Assistant District Attorney, for the Commonwealth.

COWIN, J. A jury convicted the defendant, Robert Tirado, of murder in the second degree. On appeal, he contends that the judge erred in denying his request for a self-defense instruction. We conclude that there was no view of the evidence that could have created a reasonable doubt on the part of the jury that the defendant acted in self-defense, and that therefore a self-defense instruction was not warranted. Accordingly, we affirm.

1. *Material facts and testimony.* The jury could permissibly have found the following. On February 15, 2001, the defendant spent the evening at his home in New Bedford drinking with his friends Ryan Marshall, Jonathan Torres, Rebecca Rose, Heather Lawrence, Orlando Badillo, Lionel Rodriguez and Dennis Smith. Around 2:00 A.M. on February 16, 2001, Badillo, Rod-

riguez and Smith left the defendant's home. The defendant, Marshall, Torres, Lawrence and Rose left shortly thereafter and walked to the apartment of Donna Medeiros, Marshall's mother, at 86 Bluefield Street, New Bedford. When they arrived, they found that Medeiros had returned from an evening at Marshall's Pub and was hosting an "after-party." Medeiros's friends Liz Cardona, David Amaral, Tonio Ramos, Kevin Rose and George Carpenter, a group older than the defendant and his friends, were present at the after-party. Both groups continued drinking at Medeiros's apartment.

At some point during the after-party, a confrontation between the defendant and George Carpenter escalated, moved outside, stopped, then resumed several yards down Bluefield Street. While arguing with the defendant, Carpenter was attacked by the defendant's friends Badillo, Smith and Rodriguez. The defendant took part in this attack by kicking Carpenter as he lay on the ground. Carpenter died from his injuries. While the various witnesses agree to these basic facts about the altercation, their accounts of the details that led to the encounter in which Carpenter died differ significantly. We summarize this testimony in the light most favorable to the defendant as follows.

The defendant testified that shortly after he was introduced to Carpenter at the party, Carpenter began calling him names such as "thug," "punk" and "hoodlum." When the defendant told Carpenter to leave him alone, Carpenter patted him on the head and said, "You'll be okay, son." The defendant told Carpenter not to touch him; Carpenter replied that he could touch the defendant if he wanted to, and the defendant and Carpenter then agreed to "take this outside."

The defendant testified further that once outside, Carpenter wrapped a belt around his right hand and hit the defendant in the eye. The defendant attempted to fight back, but Carpenter's friends, who had accompanied him, stepped between the two and held the defendant back. The defendant claimed that one of Carpenter's friends, David Amaral, had a tire iron in his hand, "like he was going to do something with it." Because he was scared, and because it was four men against one, the defendant called Badillo on his cellular telephone and asked him to "come down here." After the defendant called Badillo, Carpenter, still

calling the defendant names, got in his car and drove away. The defendant then returned to Medeiros's apartment.

The defendant testified that while he was inside the apartment, James Pierce came in the front door and told him that Carpenter had come back to fight him. The defendant went outside and found Carpenter on Bluefield Street, apparently waiting for him. The two yelled at each other while several of Carpenter's friends, who had been helping to change a tire on Carpenter's automobile, stood by. Amaral held a tire iron, but did not approach the defendant with it.

While the defendant and Carpenter argued, two cars arrived. Several individuals, including the defendant's friends Badillo, Rodriguez and Smith, jumped out of the cars and attacked Carpenter. They knocked Carpenter to the ground and beat him. While Carpenter was lying on the ground, the defendant kicked him once, backed away, and then ran. He testified that during the entire altercation, he believed that the older men were drunk and he was "scared for [his] life."

Other witnesses from the party corroborated the defendant's assertion that he and Carpenter had argued before Carpenter was attacked, but gave varying accounts of the sequence of events. Rebecca Rose testified that she had been upstairs at the party, and that when she came downstairs and went outside, she observed the defendant kicking Carpenter, who was on the ground. Carpenter was a big man and was drunk. Some of Carpenter's friends, i.e., Amaral, Ramos and Kevin Rose, were also outside. As he was kicking Carpenter, the defendant was on his cellular telephone. A few minutes later, she observed two cars pull up. Badillo, Rodriguez and Smith exited the cars and joined the defendant in kicking Carpenter.

David Amaral testified that he left the party after the defendant and Carpenter, and that he did not see them fighting there. When he drove up the street, however, he observed Carpenter and the defendant arguing in front of Carpenter's car. Ramos and Kevin Rose were with Carpenter. Amaral stopped and was helping Ramos to change Carpenter's tire when several cars pulled up and the occupants attacked Carpenter. Amaral did not approach with the tire iron. Instead, when the fight began,

he ran to his mother's house to call 911. He did not observe the defendant's actions during the fight.

Tonio Ramos likewise observed no physical altercation at the party, but did state that he left with Carpenter when Carpenter and the defendant argued. Ramos and Carpenter drove up the street in Carpenter's car and stopped to change a tire. As they were changing the tire, a sport utility vehicle (SUV) pulled up. At the same time, Ramos observed the defendant and two of his friends approaching Carpenter. The occupants of the SUV, joined by the defendant and his friends, began beating Carpenter. Ramos observed the defendant kick Carpenter in the ribs.

Carpenter's friend Kevin Rose testified that he observed the defendant and Carpenter arguing outside of the party, and that he and some others held the defendant back from Carpenter. As Carpenter got in his car to drive away, Rose saw the defendant stab Carpenter's tire with a knife. Rose testified that he walked down the street by the side of Carpenter's car as Carpenter drove up Bluefield Street. As Carpenter's tire was being changed, Rose saw an SUV pull up. Several men got out and beat Carpenter. Rose observed the defendant join with the occupants of the SUV, trying to punch Carpenter and subsequently kicking him. He also testified that Carpenter was drunk and a "big guy," and that he was "hot" at the defendant.

At the conclusion of all of the testimony, the defendant requested that the jury be instructed on self-defense, but the judge declined. The defendant renewed his objection immediately following the judge's charge.

2. *Discussion.* When any view of the evidence suggests that a defendant may have acted in self-defense, "the defendant is entitled to a[] [jury] instruction which places on the Commonwealth the burden of disproving . . . self-defense beyond a reasonable doubt." *Commonwealth* v. *Reed*, 427 Mass. 100, 102 (1998), quoting from *Commonwealth* v. *Maguire*, 375 Mass. 768, 772 (1978). Evidence of self-defense is sufficient "if any view of the evidence would support a reasonable doubt as to whether the prerequisites of self-defense were present." *Commonwealth* v. *Pike*, 428 Mass. 393, 395 (1998). In making this

determination, "all reasonable inferences should be resolved in favor of the defendant, and, no matter how incredible his testimony, that testimony must be treated as true." *Ibid.*

The prerequisites for self-defense vary depending on the level of force, deadly or nondeadly, that the defendant used against his victim. Whether force is deadly or nondeadly is determined by whether a dangerous weapon was used. See *Commonwealth v. Toon*, 55 Mass. App. Ct. 642, 644 n.3 (2002). Some items, such as a shod foot, are not dangerous weapons per se, but may be dangerous weapons as used.[1] See *Commonwealth* v. *Tevlin*, 433 Mass. 305, 310-311 (2001). In such situations, where the level of force used cannot be determined as a matter of law, instructions on both deadly force and nondeadly force may be appropriate. See *Commonwealth* v. *Walker*, 443 Mass. 213, 217 (2005). Because either or both of such instructions might theoretically have been warranted in this case, we examine the evidence to determine whether it supported a reasonable doubt with respect to the prerequisites for the use of both deadly and nondeadly force in self-defense.

To justify the use of deadly force in self-defense, the defendant must have reasonable cause to believe that "he was in imminent danger of death or serious bodily harm." *Commonwealth* v. *Berry*, 431 Mass. 326, 335 (2000), quoting from *Commonwealth* v. *Carrion*, 407 Mass. 263, 268 (1990). For the use of nondeadly force in self-defense, the defendant must have a reasonable concern for his personal safety. *Commonwealth* v. *Franchino*, 61 Mass. App. Ct. 367, 368-369 (2004). Additionally, both types of self-defense require that the defendant retreat if retreat is reasonable in the circumstances; that is, he must avail himself of "all proper means to avoid physical combat" before he resorts to the use of force. *Commonwealth* v. *DeCaro*, 359 Mass. 388, 390 (1971), quoting from *Commonwealth* v. *Kendrick*, 351 Mass. 203, 212 (1966). See *Commonwealth* v.

---

[1]The level of force used is independent of whether someone died as a result of the application of said force. " 'Deadly force' refers to the level of force used, not the resulting injury." *Commonwealth* v. *Walker*, 443 Mass. 213, 218 (2005).

*Berry*, 431 Mass. at 335; *Commonwealth* v. *Franchino*, 61 Mass. App. Ct. at 369.[2]

In the present case, an instruction as to self-defense was not warranted because the evidence does not support a reasonable doubt as to the presence of the prerequisites for either type of self-defense. The jury could not, on this record, permissibly find that the defendant, when he kicked Carpenter, had reason to fear death or serious bodily injury, or even to be concerned for his personal safety. Furthermore, the evidence did not support a finding that the defendant availed himself of reasonably available means of retreat. We examine these propositions in sequence.

In order for a defendant's belief that he is in imminent danger of death or serious bodily harm to be reasonable, the victim must have committed an overt act against him. *Commonwealth* v. *Pike*, 428 Mass. at 396. Here, there is no evidence that Carpenter committed any overt act against the defendant; the defendant testified that he and Carpenter were yelling at each other, and that Carpenter was attacked by the defendant's friends and beaten to the ground. The defendant stated that he kicked Carpenter after Carpenter was brought down by his friends, and does not claim that Carpenter at that point attempted to make physical contact with him in any way. No other witness testified that Carpenter committed any overt act against the defendant immediately prior to the kicking. Indeed, at the time that battery occurred, the victim was on the ground beset by the defendant's friends, and was hardly in a position to take endangering action against anyone.

---

[2]Both types of self-defense also require that the amount of force used in self-defense be no more than reasonably necessary in the circumstances. See *Commonwealth* v. *Reed*, 427 Mass. at 102-103 (deadly force); *Commonwealth* v. *Galvin*, 56 Mass. App. Ct. 698, 700-701 (2002) (nondeadly force). The determination whether appropriate force was used, however, is a factual one to be made by the jury once the defendant raises reasonable doubt as to the first two elements of self-defense. See *Commonwealth* v. *Berry*, 431 Mass. at 335; *Commonwealth* v. *Toon*, 55 Mass. App. Ct. at 645 n.4; *Commonwealth* v. *Galvin*, 56 Mass. App. Ct. at 700-701. Therefore, for the purposes of determining whether a jury instruction on self-defense should be given in the first place, whether the amount of force used was reasonably necessary is not a consideration. See *Commonwealth* v. *Berry*, 431 Mass. at 335; *Commonwealth* v. *Toon*, 55 Mass. App. Ct. at 645 n.4.

For much the same reasons, the evidence did not call for an instruction on the use of nondeadly force in self-defense either. To be entitled to use nondeadly force in self-defense, the defendant must have a reasonable concern for his personal safety. *Commonwealth* v. *Franchino*, 61 Mass. App. Ct. at 368-369. There is no evidence that the defendant had such a concern or, if he did, that the concern was reasonable in the circumstances. The defendant testified that he sought out Carpenter on Bluefield Street and engaged in a yelling match with him. We view with considerable skepticism claims of concern for personal safety where it is the defendant who precipitates the encounter. As indicated, the testimony of all witnesses to the fight, including the defendant, shows that the defendant kicked Carpenter as Carpenter lay on the ground, and it is self-evident that in such a position and surrounded by the defendant's allies, Carpenter could not reasonably be said to pose a threat to the defendant's safety.

The defendant argues that Carpenter's earlier aggression, including blindsiding the defendant with a belt, gave the defendant reason to fear for his safety. This contention ignores the fact that the defendant sought out Carpenter, plainly indicating that he was not actually in fear. While the defendant might have had reason to fear Carpenter at the time of their earlier encounter in the yard, any reasonable basis for concern had disappeared when Carpenter was helpless on the ground, being pummeled by the defendant's friends. The judge was correct in concluding on this basis that an instruction regarding nondeadly force in self-defense was not warranted.

In addition, there is no basis in the evidence for the jury to entertain a reasonable doubt whether the defendant availed himself of all reasonable opportunities to retreat. When reasonable in the circumstances, retreat is required, and the use of either deadly or nondeadly force is impermissible where the retreat is practical. See *Commonwealth* v. *Berry*, 431 Mass. at 335.

The evidence here shows that the defendant had several opportunities to avoid fighting with Carpenter, but chose instead to seek out a physical confrontation. The defendant testified that after he initially argued with Carpenter outside of Medeiros's

apartment, he went inside the apartment and Carpenter drove away. When he was told that Carpenter had returned and was waiting outside to fight him, the defendant voluntarily exited the apartment to continue the altercation. The defendant could have avoided the confrontation simply by remaining inside the apartment. Compare *Commonwealth* v. *Hart*, 428 Mass. 614, 616 (1999). After the defendant exited the apartment, he approached Carpenter and confronted him. The confrontation between the defendant and Carpenter occurred on a public street, and there was no evidence that the defendant could not have walked away at any time (particularly given the presence of his friends). Compare *Commonwealth* v. *Curtis*, 417 Mass. 619, 632-633 (1994); *Commonwealth* v. *Berry*, 431 Mass. at 335; *Commonwealth* v. *Alves*, 50 Mass. App. Ct. 796, 809 (2001); *Commonwealth* v. *Toon*, 55 Mass. App. Ct. at 653. That Carpenter's friend, Amaral, was holding a tire iron at the time changes nothing, there being no evidence that Amaral threatened the defendant with the tire iron, or used it for any purpose other than to replace Carpenter's tire.

The defendant argues that there could be reasonable doubt as to his ability to retreat on the strength of the testimony of various witnesses in combination — specifically, the testimony of several witnesses that Carpenter was accompanied by three friends after he left the party, and the testimony of Rebecca Rose that the defendant and Carpenter had begun fighting before the SUV containing the defendant's friends arrived. From this, the defendant posits that the jury could find that he was confronted by up to four men prior to the arrival of his companions, and was forced to defend himself by fighting with Carpenter. However, this does not explain either why the defendant left the apartment or why he could not have walked away from a fight on a public street. In addition, Rebecca Rose's testimony was that she observed the defendant kicking Carpenter as he was on the ground, while simultaneously calling on his cellular telephone. That the defendant had the opportunity to talk on his telephone while at the same time beating Carpenter to the ground makes it impossible for the jury to conclude that the defendant was forced to fight because a means of retreat was impossible.

3. *Conclusion.* For the reasons stated, the evidence does not support a reasonable doubt with respect to either of the first two prerequisites of self-defense, i.e., reasonable fear on the part of the defendant and no practical opportunity to avoid the encounter. It is therefore unnecessary to consider whether there was excessive force in self-defense. See *id.* at 645 n.4. It follows that the judge's refusal to instruct on self-defense was proper.

*Judgment affirmed.*