COMMONWEALTH *vs.* ABIGAIL GILLIARD.

No. 93-P-225.

Suffolk. November 15, 1993. - March 7, 1994.

Present: KASS, KAPLAN, & FINE, JJ.

*Homicide. Grand Jury. Practice, Criminal,* Grand jury proceedings, Assistance of counsel, Instructions to jury, Lesser included offense. *Waiver. Constitutional Law,* Grand jury, Self-incrimination. *Joint Enterprise.*

At a murder trial, the judge correctly denied the defendant's motion to dismiss the indictment on the ground that the defendant had appeared before the grand jury without counsel, where the judge found that the defendant had properly been informed of her statutory rights under G. L. c. 277, § 14A, to consult with counsel and have counsel present with her before the grand jury, and that the defendant understood her rights and voluntarily waived them. [186-187]

In a murder case the defendant was not entitled to reversal of her conviction on the ground that she had appeared before the grand jury without having been advised by the prosecutor that she was a potential defendant, where, if it be assumed that the defendant had a right to be so advised, the appropriate sanction for failure to give such a warning would be denial to the prosecution of the use of the witness's self-incriminating testimony before the grand jury; in any event, the defendant's grand jury testimony had not been used at trial. [187-189]

At the trial of a murder indictment, the judge gave adequate instructions on the mental state required for conviction on a joint venture theory; his final instructions on the issue, in the midst of deliberations, were clear and fully complied with the defendant's requests. [189-191]

In the circumstances of a murder trial in which defense counsel did not request an instruction on a lesser included offense, to which the defendant would have been entitled, a motion for new trial, if filed, was to be heard in the Superior Court. [191-192]

INDICTMENT found and returned in the Superior Court Department on February 25, 1991.

A motion to dismiss was heard by *Robert W. Banks*, J., and the case was tried before *Roger J. Donahue*, J.

*Lawrence P. Murray* for the defendant.

*Lucy A. Manning*, Assistant District Attorney, for the Commonwealth.

FINE, J. A spontaneous melee late at night in January of 1990 on Shawmut Avenue in Roxbury, involving a large number of young people, mostly female, resulted in the fatal stabbing of seventeen year old Yolanda Carter. After a jury trial in Superior Court, the defendant was found guilty of Carter's second degree murder. The foreman's gratuitous notation on the verdict slip indicated that the defendant's guilt was as a joint venturer, not as a principal. On appeal, the defendant contends (1) that the judge should have allowed her pretrial motion to dismiss the indictment because she appeared before the grand jury without counsel and without having been informed that she was a potential defendant; and (2) that the jury were not properly instructed on joint venture, correct instructions on the point not having been given until deliberations were well underway. We affirm the conviction. However, we express our concern about an issue raised neither at trial nor on appeal which, in our view, should be explored, at the defendant's option, in connection with a motion for a new trial.

1. *The validity of the indictment.* Before trial, the defendant moved to dismiss the indictment against her. According to the motion judge's findings, the defendant was seventeen, with a tenth-grade education, at the time of the offense. The police interviewed her shortly after the stabbing. She told them that she was present during the fight and had observed another young woman stab the victim. Over the next couple of months, she made two inculpatory statements of which the police were aware. Prior to the commencement of the grand jury proceedings on July 9, 1990, no arrests had been made. The defendant received a summons to appear on July 10, 1990, and she appeared without counsel and testified. Over the next six months numerous witnesses appeared before the

grand jury. The defendant and two other young women were eventually indicted for first degree murder.[1]

At the motion hearing, the defendant testified that, before entering the grand jury room, the prosecutor told her that she would not need an attorney. According to the grand jury transcript, however, when the defendant entered the room, the prosecutor informed the defendant:

> "Before you answer any questions, I will advise you of certain rights you have as a witness. You have the right to be represented by counsel and to have an opportunity to consult with counsel. If you wish to have counsel, you will have a reasonable opportunity to obtain one of your choice. If you cannot afford counsel, you have the right to ask the Court to appoint a lawyer for you.
>
> "If you are represented by counsel, you have the right to have your attorney present with you in this Grand Jury room, for the purpose of advising you.
>
> "You do not have a general right to remain silent. You must answer truthfully all questions put to you by myself or any other Assistant District Attorney or members of the Grand Jury, unless you claim a valid privilege against self-incrimination or other privilege recognized in law.
>
> "By self-incrimination it is meant that you are not required to answer any questions that may tend to implicate you in the commission or attempted commission of a crime . . . . Your right not to give such evidence against yourself is secured to you by both the Constitution of the United States and the Commonwealth of Massachusetts.

---

[1] The indictments against Nicole Badgett and Keisha Allen were dismissed. The Commonwealth's appeals from those dismissals are pending in the Supreme Judicial Court.

"Anything you do say in these proceedings may be used against you in court. And if you lie under oath in answering questions asked of you, you may be prosecuted for perjury."

The defendant indicated that she understood the warnings and that she did not wish to be represented by counsel, and she proceeded to answer questions. She admitted that she was present during the affray and that she and another young woman, who had a knife, fought with the victim.

The judge found, contrary to the defendant's testimony, that the prosecutor had not had any meaningful conversation with the defendant before she entered the grand jury room. The judge also found that the defendant was capable of understanding the rights which the prosecutor had explained to her in the grand jury room and, having some experience with criminal proceedings, that she understood those rights. He found, in addition, that she was not a "target" of the grand jury investigation but that she was a "suspect" and that her testimony was "exculpatory." Concluding that dismissal of the indictment was not required because all of the defendant's rights had been explained to her and she had waived those rights, the judge denied the motion to dismiss the indictment.

A witness called to testify before a grand jury has no constitutional right, Federal or State, to the assistance of counsel. See *Commonwealth* v. *Jones*, 403 Mass. 279, 286 (1988); *Commonwealth* v. *Griffin*, 404 Mass. 372, 374 (1989); *Commonwealth* v. *Hawkins*, 26 Mass. App. Ct. 910, 912 (1988). A grand jury witness does have a statutory right under G. L. c. 277, § 14A, inserted by St. 1977, c. 770, "to consult with counsel and to have counsel present at . . . examination before the grand jury . . . [,]" and, presumably, one who, like the defendant, is indigent has the right to have counsel appointed to assist her at no expense to her. The defendant contends that, to safeguard her right not to incriminate herself and her right to equal protection, counsel should have been appointed to assist her in her interrogation before the grand jury. The prosecutor gave the defendant timely ad-

vice, however, of her right to have counsel appointed at no expense to her as well as her right not to incriminate herself. Moreover, the judge found that she understood those rights. There is no basis for our setting aside the judge's findings. Having indicated that she wished to proceed without counsel, and then voluntarily having answered the questions put to her, the defendant waived the rights on which she is now relying. See *Commonwealth* v. *Weed*, 17 Mass. App. Ct. 463, 467 (1984).

The defendant contends, nevertheless, that she had a right to a warning not only of her right not to incriminate herself, but also of her status as a potential defendant in the case. We assume, for purposes of the discussion, that when the defendant was called to testify, the prosecutor expected her to be indicted, notwithstanding the large number of witnesses, many of them also participants in the melee, called during the lengthy grand jury proceedings, and the complicated fact situation out of which the charges arose. We also assume, for purposes of the discussion, that the judge incorrectly found that the defendant's grand jury testimony was exculpatory in nature. She had, at the very least, placed herself at the scene of the affray, and she admitted that she and another young woman, who had a knife, fought with the victim.

A grand jury witness has no right under the United States Constitution to be warned in advance of his testimony that he is a "target" of the investigation or a potential defendant. See *United States* v. *Washington*, 431 U.S. 181 (1977). In that case, a grand jury witness, eventually indicted, had been warned that he had a right to remain silent, but not that he was a potential defendant. The majority, viewing the issue as whether, in the totality of circumstances, the witness's free will was overborne, decided that the warning to the defendant that he had a right to remain silent eliminated any compulsion that might otherwise have been present. See also *United States* v. *Pecheco-Ortiz*, 889 F.2d 301, 307-311 (1st Cir. 1989).

The Supreme Judicial Court has not had occasion to rule on the issue whether, under art. 12 of the Massachusetts

Declaration of Rights, a grand jury witness should be warned if he is a potential defendant. As the defendant points out, art. 12 provides, inter alia, that "[n]o subject shall . . . be compelled to accuse, or furnish evidence against himself," and it establishes the right to a grand jury indictment as a prerequisite for prosecution of any crime for which one may be sentenced to State prison. *Jones* v. *Robbins*, 8 Gray 329, 342, 347 (1857).

There are sound reasons why such a right might be found in our Constitution. A person appearing before the grand jury, particularly one who feels he is innocent of the crime being investigated, may well be unaware that he has been targeted for possible prosecution and may not fully understand the implications of freely giving sworn testimony. According to Justice Brennan, dissenting in *United States* v. *Washington*, 431 U.S. at 192, "[t]he privilege [against self-incrimination] is emptied of substance unless the witness is further advised by the prosecutor that he is a potential defendant." Justice Brennan goes on to note the number of States (New York, New Jersey, Kentucky, Minnesota, Alabama, and Illinois) whose courts, as of 1977, had prohibited the use of a potential defendant's grand jury testimony to procure an indictment or to convict him. *Id.* at 194. The United States Department of Justice makes warnings for "targets" a required policy. See *United States* v *Pacheco-Ortiz*, 889 F.2d at 307-308; *United States* v. *Jacobs*, 547 F.2d 772, 774 (2d Cir. 1976), cert. dismissed, 436 U.S. 31 (1978); *United States* v. *Crocker*, 568 F.2d 1049, 1055-1056 (3d Cir. 1977); Mosteller, Discovery Against the Defense: Tilting the Adversarial Balance, 74 Calif. L. Rev. 1567, 1627 & n.193 (1986); Newman, The Suspect and the Grand Jury: A Need for Constitutional Protection, 11 U. Rich. L. Rev. 1, 9-15 (1976).

Even assuming that a right to be warned of potential defendant status would be found in the Massachusetts Constitution, however, reversal of the defendant's conviction would not be an appropriate sanction. Where the right to such a warning has been recognized, and even in Justice Brennan's

dissent in *United States* v. *Washington*, 431 U.S. at 194, the sanction deemed appropriate for failure to give the warning is denial to the prosecution of the use of the witness's self-incriminating grand jury testimony at trial. See *People* v. *J.H.*, 136 Ill. 2d 1, 12-13, cert. denied sub nom. *Humphries* v. *Illinois*, 498 U.S. 942 (1990). In this case, the defendant's grand jury testimony was not used at trial. Arguably, dismissal of an indictment would be an appropriate sanction for failure to give the warning in a case in which the other evidence before the grand jury was not sufficient to warrant the indictment. See *Bank of Nova Scotia* v. *United States*, 487 U.S. 250, 256 (1988). It is not argued, however, and does not appear to be the case, that the other evidence here was insufficient.

2. *Instructions on joint venture.* There was evidence that warranted a finding that the defendant engaged in a joint venture to murder Carter. There was also a reasonable basis in the evidence to warrant a finding that the defendant, without the intent required for murder, participated in a joint venture only to beat the victim with her fists.[2] The defendant requested an instruction to the effect that, if the defendant intended only to beat the victim with her fists, she could not be found guilty of murder. See *Commonwealth* v. *Washington*, 15 Mass. App. Ct. 378, 383 (1983). Such an instruction before the deliberations might have been helpful to the de-

---

[2]Five of the six eyewitnesses who testified for the prosecution stated that, before the victim collapsed with a fatal knife wound, several females, of whom the defendant, at least inferably, was one, were punching and beating the victim for a period of between five and twenty minutes while she was trying to protect herself at the hood of a parked car. Testimony from those five Commonwealth witnesses placed one knife in the hands of a male and another knife in the hands of a girl — not the defendant — dressed in red. A defense witness testified that she saw a knife in the hands of a light-skinned girl, also not the defendant.

There was no direct evidence of who did the stabbing. Only Lisa Lane, a Commonwealth witness, provided evidence connecting the defendant with a knife. Lane testified that she had a knife and that, in the course of the fight, the defendant called to her, "Give me the knife; [g]ive me the knife," and that she then handed the knife to the defendant. Shortly after the incident, however, Lane had told the police that she had not seen the defendant with a knife, and that it was a different participant, a close friend of hers, who had requested the knife.

fense. With one exception, however, the instructions given the jury initially were generally adequate in defining the mental state required for conviction of murder on a joint venture theory.[3] The exception was the unfortunate use of an example, that of an armed robbery with multiple participants in the course of which a killing occurs, to illustrate the concept of joint venture. The legal principle involved in the example was the felony-murder rule and not the joint venture principle. Unlike the situation in a felony-murder case, to sustain a conviction on a joint venture theory the prosecution must show that each participant shared the requisite mental state with the principal. See *Commonwealth* v. *Longo*, 402 Mass. 482, 487 (1988). Because in the example, unlike in the present case, an intent to cause death or inflict injury is not a required element, the use of the example was prejudicial and confusing. The defendant objected to the use of the example, as well as to the judge's failure to give the requested instruction that an intent on the part of the defendant to engage in a fist fight would not justify her conviction of murder.

Before the jury began to deliberate, the judge instructed them that the armed robbery example was given "to show how people could participate together, but not as any particular example of all the elements of a felony murder crime." He went on to state that the defendant could not be found guilty unless she shared the intent to murder the victim. There followed a further objection. Later on in the deliberations, the judge reinstructed the jury and told them again that the armed robbery example had no application to this case because it involved a different rule of law. After some

---

[3]To sustain a murder conviction on the theory of joint venture, the Commonwealth had to prove that the defendant intentionally assisted in the stabbing and that she did this sharing with the principal the mental state required for the crime. See *Commonwealth* v. *Hennessey*, 17 Mass. App. Ct. 160, 162 (1983). The judge so instructed the jury. He emphasized that the defendant had to be an active participant in the venture. He stated that the jury could infer the requisite mental state from the defendant's knowledge of the circumstances and subsequent participation in the offense, and he placed the burden on the Commonwealth to prove that the defendant knew that the perpetrator was armed and intended to murder the victim, and that the defendant shared that intent.

further period of deliberation, on his own motion, the judge gave the jury, in substance, the requested instruction distinguishing a joint venture to commit murder from one to commit assault and battery.[4] The final instructions on the required mental state for conviction of murder were clear and fully complied with the defendant's requests. The jury continued to deliberate for several hours before reaching their verdict.

On appeal, the defendant contends that she was prejudiced by the initial inadequate instructions and that the judge's corrections came too late. Even assuming the initial instructions were inadequate, however, the main purpose of an objection is to bring errors to the attention of the judge so that he can correct them while there is still an opportunity to do so. Here the judge did correct the error. That he did so in the midst of deliberations would not necessarily be a reason for reversal. See *Commonwealth* v. *Souza*, 34 Mass. App. Ct. 436, 443-444 (1993).

3. *Lesser included offense instruction.* We alight on a third issue, not raised by either party, but to which we are alerted by the jury's handwritten notations on the verdict slip indicating belief that the defendant was a joint venturer but disbelief that she wielded the knife. There was no request for an instruction on the lesser included offense of assault and battery, and no argument is made on appeal that failure to give such an instruction was reversible error. The same attorney represented the defendant at trial and on appeal. Although there may be exceptions, see *Commonwealth* v. *Yunggebauer*, 23 Mass. App. Ct. 46, 52 (1986), ordinarily, to be entitled to a lesser included offense instruction, defense counsel must request it. See *Commonwealth* v. *Roberts*, 407 Mass. 731, 737 (1990).[5]

---

[4]The judge instructed the jury: "The mere fact that the defendant decided to engage in a fist fight is no evidence that she decided to enter a joint enterprise involving knives. There is a shared criminal intent again of striking the victim with a knife that you must find to a point beyond a reasonable doubt."

[5]Sua sponte instructions on lesser included offenses are required in some States. See *People* v. *Wickersham*, 32 Cal. 3d 307 (1982); *State* v. *Cow-*

Commonwealth v. Gilliard.

The evidence justifying the judge's instruction distinguishing a joint venture to beat the victim with fists from a joint venture to murder her would have required an instruction on the lesser included offense of assault and battery had such an instruction been requested. It was open to the jury on that evidence to find that the defendant engaged with others in a vicious attack but lacked the intention to murder. As we have observed, counsel discussed with the judge the evidence on which a lesser included offense instruction would have been based, but he failed to bring that discussion to its logical conclusion with a request for the instruction.

In the particular circumstances of the present case, although in all other respects counsel represented the defendant conscientiously and effectively, we think there is a substantial question whether he pursued reasonable trial tactics, or committed a serious oversight or error, in not asking for an instruction on assault and battery.

Accordingly, we affirm the judgment, but we order that new counsel be appointed to represent the defendant, and, if filed, a motion for a new trial on the ground of ineffective assistance of counsel shall be heard in the Superior Court.

*So ordered.*

---

ard, 54 N.C. App. 488, 489-490 (1981); *Barnett* v. *State*, 560 P.2d 997, 1001 (Okla. Crim. App. 1977); *Strader* v. *Tennessee*, 210 Tenn. 669, 678-679 (1962) (statutory requirement). In other States sua sponte instructions are required in murder or death penalty cases. See *People* v. *Stephens*, 416 Mich. 252, 261 (1982); *State* v. *Leinweber*, 303 Minn. 414, 421 (1975); *State* v. *Miller*, 2 Or. App. 353 (1970); In many States, however, judges are not required to give such instructions sua sponte. See *State* v. *Sheppard*, 253 Mont. 118, 123 (1992), and cases cited.