## COMMONWEALTH *vs.* ABIGAIL GILLIARD.

No. 97-P-1710.

Suffolk. December 4, 1998. - February 17, 1999.

Present: ARMSTRONG, KAPLAN, & GILLERMAN, JJ.

*Practice, Criminal,* Assistance of counsel, Instructions to jury, Lesser included offense, New trial.

At the trial of a murder indictment, defense counsel rendered ineffective assistance by failing to ask the judge to instruct on a lesser included offense, assault and battery, in circumstances in which there was sufficient evidence to support such an instruction; where the defendant was prejudiced by the lack of such an instruction, a new trial was required. [350-352]

INDICTMENT found and returned in the Superior Court Department on February 25, 1991.

Following review by this court, 36 Mass. App. Ct. 183 (1994), a motion for a new trial, filed on September 9, 1995, was heard by *Margaret R. Hinkle,* J.

*Paul B. Linn,* Assistant District Attorney, for the Commonwealth.

*John H. Cunha, Jr.,* for the defendant.

KAPLAN, J. The defendant, Abigail Gilliard, was tried by jury and convicted of the murder in the second degree of Yolanda Carter. She received the mandatory sentence of life imprisonment. On appeal, our court affirmed the conviction. *Commonwealth* v. *Gilliard,* 36 Mass. App. Ct. 183 (1994). However, the court (by Fine, J.), on its own initiative, ordered that new defense counsel be appointed who might move for a new trial. *Id.* at 192. This was to test whether trial counsel had provided ineffective assistance to the defendant by failing to request an instruction on assault and battery as a lesser included offense. New counsel did as the court suggested and a judge of the Superior Court (other than the trial judge), after reexamining the trial record and receiving affidavits of trial counsel, al-

lowed the motion for a new trial, writing a memorandum of decision.[1]

1. There is no discordance between the summary of the record by our court and the summary by the motion judge. The substance — we borrow largely verbatim from the two summaries — is as follows. On the night of January 27, 1990, a large number of people, mostly female, including the defendant Gilliard (aged seventeen), were involved in a street fight on Shawmut Avenue in the Roxbury section of Boston. The fight resulted in the fatal stabbing of Yolanda Carter.

At the trial on the indictment for murder, five of the six eyewitnesses who testified for the prosecution stated that before the victim collapsed with a fatal knife wound, several females, of whom the defendant, at least inferably, was one, were punching and beating the victim for a period of between five and twenty minutes while she was trying to protect herself at the hood of a parked car. Testimony from those five Commonwealth witnesses placed one knife in the hands of a male and another knife in the hands of a girl dressed in red. No one testified that this female was the defendant. A defense witness testified that she saw a knife in the hands of a light-skinned girl, also not the defendant.

There was no direct evidence of who did the stabbing. Only Lisa Lane, a Commonwealth witness, provided evidence connecting the defendant with a knife. Lane testified that she had a knife and that, in the course of the fight, the defendant called to her, "Give me the knife; [g]ive me the knife," and she then handed the knife to the defendant. Shortly after the incident, however, Lane told the police that she had not seen the defendant with a knife, and that it was a different participant, a close friend of hers, who had requested the knife.

In addition to the testimony surrounding the incident, the Commonwealth offered inculpatory statements made by the defendant on two subsequent occasions. Trial witness Denise Spurill testified that on March 10, 1990, while at the Jackson Square Massachusetts Bay Transportation Authority station, the defendant said, 'You'll be the next bitch that I kill, just like I did that bitch Yolanda Carter." Trial witness Terry Spence testi-

---

[1]Neither side asked for an evidentiary hearing; both submitted briefs and argued orally. The judge accepted the factual assertions in the affidavits of defense counsel since they were uncontroverted.

fied that on April 18, 1990, the defendant stated to him, "I killed Yolanda Carter, and I'll kill you too."

2. After closing speeches, the judge instructed the jury on murder in the first and second degrees. He also instructed on voluntary manslaughter. Defendant's counsel wanted the judge to instruct on murder and on no other offenses, so they objected to the judge's instructing even on manslaughter.

As we observed, 36 Mass. App. Ct. at 189, there was evidence warranting a finding that the defendant engaged in a joint venture to murder Carter, and also evidence warranting a finding that the defendant, without the intent required for murder, participated in a joint venture only to beat Carter with her fists. In connection with the instruction on joint venture, defense counsel asked the judge to distinguish what was required for a finding of joint venture to murder from the requirements for a joint venture to commit assault and battery. The judge charged accordingly.[2]

The jury brought in a verdict of guilty of murder in the second degree and subjoined a statement on the verdict slip indicating that the defendant's guilt was that of a joint venturer, not a principal — guilty "as a participant in a joint enterprise."

3. On defendant's appeal to our court,[3] she argued two points. Reverting to the pretrial period, she had moved to dismiss the indictment against her, arguing that she appeared without counsel and without being told that she was a potential defendant. The motion was denied and the point was renewed on appeal. Second, she contended that the jury had not been well instructed on joint venture as the charge on that matter was not correctly given until the jury were already deliberating.

The court responded to these contentions and affirmed the conviction. It added the order for appointment of new counsel.

4. As mentioned above, trial counsel sought and obtained an instruction marking the difference between joint venture to murder and joint venture to assault and beat. At the same time, counsel must have been aware — and an affidavit of counsel confirms they were aware — that there was evidence sufficient to support a finding of assault and battery.[4] If the evidence sup-

---

[2] The judge charged: "The mere fact that the defendant decided to engage in a fist fight is no evidence that she decided to enter a joint enterprise involving knives. There is a shared criminal intent again of striking the victim with a knife that you must find to a point beyond a reasonable doubt."

[3] Counsel on the defendant's appeal was affiliated with trial counsel.

[4] There was testimony from at least five eyewitnesses that the defendant was

ports the finding of a lesser included offense, and counsel requests it, the judge must instruct the jury on the possibility of conviction of the lesser crime. *Commonwealth* v. *Woodward*, 427 Mass. 659, 662-663 (1998). Yet counsel "never considered" asking for that instruction. This was a serious fault. But if counsel had considered the matter and concluded not to request the instruction, they would likewise have been seriously at fault. For in these circumstances, an "all or none" strategy, or rather an intuition, that involved throwing away the chance of a mere assault and battery conviction, was quite foolhardy. Compare a lifetime sentence for murder with a two and one-half year sentence to a house of correction for assault and battery (to which the defendant could count one year's confinement to jail at the date of trial, not to speak of parole possibility).

The Commonwealth, assuming for argument's sake that counsel rendered ineffective assistance,[5] contends that the defendant was not hurt by it because the jury that bypassed manslaughter in favor of murder would not have found assault and battery. The jury might readily have skirted manslaughter because, e.g., in their view, the Commonwealth had not proved beyond a reasonable doubt that the killing took place upon provocation (it appears that the defendant found herself in a group that were themselves provocative rather than the opposite). If the jury skirted manslaughter but the evidence suggested she was involved in the beating, they may have settled on the verdict of second degree murder rather than let the defendant go free. "The doctrine [favoring instructing juries on lesser included offenses] serves the public purpose of allowing the jury to convict of the offense established by the evidence, rather than forcing them to choose between convicting the

---

among the group who beat the victim before the stabbing, and evidence also that, at an identification showup immediately after the fight, the defendant said, "I know she is going to pick me out." The evidence "would have required an instruction on the lesser included offense of assault and battery had such an instruction been requested." 36 Mass. App. Ct. at 192.

[5] In appraising a claim of ineffective assistance of counsel, we are "to see whether there has been serious incompetency, inefficiency, or inattention of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer — and, if that is found, then, typically, whether it has likely deprived the defendant of an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974).

defendant of an offense not fully established by the evidence or acquitting, even though the defendant is guilty of some offense." *Commonwealth* v. *Woodward*, 427 Mass. at 664-665. That this jury might well have taken the route to an assault and battery conviction if that instruction had been given is indicated (at least in retrospect) by the fact that they were scrupulous, by means of their notation on the verdict slip, to absolve the defendant of wielding a knife (guilty only as a joint venturer).

The court in *Commonwealth* v. *Schand*, 420 Mass. 783, 787 (1995), said "[a] motion for new trial is addressed to the sound discretion of the judge" (quoting from *Commonwealth* v. *Moore*, 408 Mass. 117, 125 [1990]), "and the judge's disposition of the motion will not be reversed unless it is manifestly unjust." *Ibid.* We believe there was no abuse of discretion herein.

5. Our affirmance of the motion judge's order for a new trial on the ground of ineffectiveness of trial counsel relieves us, as it did the motion judge, of deciding whether the trial judge erred in failing to charge sua sponte on assault and battery as a lesser offense. See *Commonwealth* v. *Thayer*, 418 Mass. 130, 133 (1994); *Commonwealth* v. *Yunggebauer*, 23 Mass. App. Ct. 46, 52 & n.4 (1986).

So, also, we need not consider whether counsel's admitted failure to consult with the defendant about gambling to forgo an assault and battery instruction was misconduct which itself would warrant the allowance of a new trial. See *Strickland* v. *Washington*, 466 U.S. 668, 688 (1984). As the Commonwealth remarks in its brief, "Counsel unquestionably should have consulted with the defendant."

*Order allowing new trial*
*affirmed.*