## Commonwealth vs. Thomas Mills.

No. 00-P-784.

Suffolk. November 9, 2001. - April 23, 2002.

Present: Brown, Greenberg, & McHugh, JJ.

*Practice, Criminal,* Instructions to jury, Lesser included offense, Assistance of counsel. *Assault and Battery. Assault and Battery by Means of a Dangerous Weapon. Constitutional Law,* Assistance of counsel. *Evidence,* Spontaneous utterance.

A defendant convicted of assault and battery by means of a dangerous weapon made no showing that, by not requesting an instruction on the lesser included offense of assault and battery, his trial attorney had represented him ineffectively where, although the state of the evidence probably would have required the judge to give the instruction had the defendant requested it, trial counsel's omission of the request appeared consistent with his calculated, tactical, all-or-nothing defense strategy; and where, absent the development of a factual record regarding counsel's motivations, judgments, and evaluations, there was no basis for concluding that counsel's decision, even if conscious and deliberate, was nonetheless unreasonable. [554-556]

At a criminal trial, the judge was well within his discretion in admitting, under the spontaneous utterance exception to the hearsay rule, a statement by the victim, about which the judge carefully noted that he was exercising his discretion, that a "rational mind" could find the victim's statement was made under the "stimulus" of the event in question, and that no particular time limit was required as long as the stimulus persisted. [556-557]

INDICTMENTS found and returned in the Superior Court Department on March 5, 1998.

The cases were tried before *David M. Roseman,* J.

*Anne O'Reilly* for the defendant.

*Rami M. Vanegas,* Assistant District Attorney, for the Commonwealth.

McHugh, J. Thomas Mills was indicted for stalking, G. L. c. 265, § 43; assault and battery by means of a dangerous weapon (a shod foot), G. L. c. 265, § 15A; and being a

habitual offender, G. L. c. 279, § 25. The first two charges were tried to a jury which, on the stalking charge, found him guilty of the lesser included offense of violation of an abuse prevention order. The jury also found him guilty of assault and battery by means of a dangerous weapon. A jury-waived trial immediately followed the jury's verdict and produced a conviction on the charge of being a habitual offender. Now the defendant appeals, claiming that (1) the judge should have instructed, sua sponte, on the lesser included offense of assault and battery and that trial counsel's failure to request such an instruction constituted ineffective assistance of counsel; and (2) the judge abused his discretion in admitting, under the spontaneous utterance exception to the hearsay rule, a statement made by the victim to one Derek Trusty. We affirm.

The pertinent evidence at trial was to the following effect. On December 30, 1997, the victim, in the company of young twin daughters the defendant had fathered, visited a Boston apartment she once shared with the defendant and where she continued to receive mail. The defendant was present when the victim and the girls arrived. An argument over money quickly began. The argument promptly escalated into a physical fight in which the victim and the defendant traded punches. The fight ended when the victim fell to the floor and the defendant, wearing boots,[1] kicked her in the head several times.

After the fight was over, the victim and the girls left the apartment. They went immediately to the home of the victim's older daughter and son-in-law, Keturah and Derek Trusty. The victim told Derek that the defendant had hit her, knocked her down and kicked her. Later that day, the victim notified the police, sought medical attention, and ultimately was treated for a hematoma on her forehead.

The defendant was eventually arrested and charged with the three offenses for which he ultimately stood trial. At trial, he relied on an alibi, claiming that he did not see the victim at all on December 30 and had spent the day at the home of his ex-

---

[1] The victim described the boots as follows: "they [weren't] like construction boots. They were almost in between a heavy sneaker and a construction boot or a snow boot."

wife visiting his son. The victim, he claimed, had fabricated the episode for reasons that require no discussion here.

Treating the defendant's claims of error in the order he raised them, no error flowed from the judge's failure to instruct, sua sponte, that simple assault and battery was a lesser included offense of assault and battery by means of a dangerous weapon. Defense counsel's omission of a request for an instruction on the subject appears consistent with an all-or-nothing defense strategy in which the defendant's alibi played the leading role. The judge had no duty to undercut such a strategy by volunteering an instruction on a middle ground.[2] See *Commonwealth* v. *Pagan*, 35 Mass. App. Ct. 788, 791-792 (1994) ("[a] judge has no duty to undercut [defendant's all-or-nothing] strategy"). See also *Commonwealth* v. *Roberts*, 407 Mass. 731, 737-739 (1990) (judge commits no error by respecting defendant's strategy to submit "all-or-nothing choice" to the jury).[3]

To be sure, conviction of assault and battery was an option for the jury if it believed that the defendant kicked the victim but did not believe that his footgear was a "dangerous weapon" or it believed that the defendant punched, but did not kick, the victim. When there is some evidence on the element differentiating the greater and the lesser offense, and when that evidence "is sufficiently in dispute so that the jury may consistently find the defendant innocent of the greater and guilty of the lesser included offense," a requested instruction on the lesser offense must be given. *Commonwealth* v. *Berry*, 431 Mass. 326, 336-337 (2000), quoting from *Commonwealth* v. *Egerton*, 396 Mass. 499, 504 (1986).

Here there was abundant evidence that both sides freely

----

. [2]The prosecution made no request for an instruction on a lesser offense, nor did it object to the absence of such an instruction. Compare *Commonwealth* v. *Woodward*, 427 Mass. 659, 662-663 & n.7 (1998).

[3]We have said that, "[o]rdinarily, even in the absence of a specific request . . . a judge should instruct on lesser included offenses when there is a rational basis in the evidence to do so." *Commonwealth* v. *Yunggebauer*, 23 Mass. App. Ct. 46, 52 (1986). When we made that statement, though, we immediately qualified it by saying that "for tactical reasons at trial a defendant might prefer that no lesser included offense instruction be given" and we therefore recommended sidebar conferences to discuss the issue when it arose. *Id.* at 52 n.4. Those statements retain their vitality today, and nothing we do here is inconsistent with them.

traded punches as the fight began. The Commonwealth's expert witness testified that the victim had a hematoma on her forehead where she said the defendant kicked her. On direct examination, however, the expert simply said that a hematoma is caused by "trauma," which he defined simply as a "blunt injury." On cross-examination, he agreed that a hematoma may be caused by a punch. That state of the evidence probably would have required the judge to give a lesser included offense instruction had the defendant requested one. Moreover, the question whether the defendant's footwear was a dangerous weapon was raised by the victim's own description of what the defendant had on his feet when he kicked her. See note 1, *supra.* Indeed, whether a particular piece of footwear is a "dangerous weapon" frequently presents a factual question for the jury's consideration and thus requires an instruction on lesser offenses. See *Commonwealth* v. *Connolly*, 49 Mass. App. Ct. 424 (2000).

It does not follow, however, that defense counsel's failure to seek such an instruction meant that the defendant received legal assistance that fell measurably below that which he might have expected from an ordinary fallible lawyer. See *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). The record shows the Commonwealth submitted a written request for instructions on the lesser included offenses pertaining to the stalking indictment. The judge charged the jury on such lesser included offenses. Following the charge, defense counsel and the prosecutor were given an opportunity to object. Neither party did so. Against that backdrop, the absence of a request for a charge on a lesser offense has, as stated earlier, all the earmarks of a calculated, tactical, all-or-nothing choice.

We are mindful that there are cases in which a tactical choice, although consciously considered and deliberately executed, is so patently unreasonable that it amounts to ineffective assistance. See *Commonwealth* v. *Adams*, 374 Mass. 722, 728 (1978). In *Commonwealth* v. *Gilliard*, 46 Mass. App. Ct. 348, 351 (1999), a case on which the defendant understandably places heavy emphasis, defense counsel "never considered" requesting an instruction on a lesser included offense of assault and battery. In reversing the defendant's murder conviction on the ground of ineffective assistance, we noted the huge difference in the penal-

556       54 Mass. App. Ct. 552 (2002)

Commonwealth *v*. Mills.

ties for murder and assault and battery meant that even a conscious decision would have been sensible, if at all, only under the kind of extraordinary circumstances the record in that case did not disclose.

Here, the difference between the possible penalties, although large, was not nearly as large as the difference in *Gilliard*. Much more important, even in the face of a penalty difference of the magnitude *Gilliard* presented, we did not leap from the fact of the difference to a conclusion that counsel was ineffective. Instead, we waited for development of a factual record regarding counsel's motivations, judgments and evaluations, factors that almost invariably require exploration before one can reach a reasoned conclusion that counsel failed to proceed in an effective manner.[4] See *Commonwealth* v. *Gilliard*, 46 Mass. App. Ct. at 348-349. See also *Commonwealth* v. *Gilliard*, 36 Mass. App. Ct. 183, 191-192 (1994). Compare *Commonwealth* v. *Donlan*, 436 Mass. 329, 333 (2002). No like record is before us in this case. We thus have no basis for concluding that counsel's decision, even if conscious and deliberate, was nonetheless unreasonable.

Less time is required to resolve the defendant's claim that the spontaneous utterance testimony was erroneously admitted. A statement is admissible under the spontaneous utterance exception to the hearsay rule if it was "spontaneous to a degree which reasonably negated premeditation or possible fabrication and if it tended to qualify, characterize and explain the underlying event." *Commonwealth* v. *Whelton*, 428 Mass. 24, 26 (1998), quoting from *Commonwealth* v. *Crawford*, 417 Mass. 358, 362 (1994). In determining the admissibility of evidence proffered

---

[4]Here, for example, given the alibi defense and the defendant's claim that the victim was fabricating her testimony, it may be appropriate to explore whether counsel concluded that an instruction on a lesser included offense, even if not referenced in summation, would have been jarringly incompatible with a claim that nothing happened and that the incompatibility might send the jurors' minds wandering down a path better not taken. So, too, it may be appropriate to explore whether counsel concluded that requiring the jury to focus on a lesser included offense might have forced it to spend more time discussing the charge than would have been required for a simple choice between two alternatives and that the defendant was unlikely to benefit from the extended discussion. Those considerations do not necessarily exhaust the store of possible inquiries.

under this exception, we look at (1) the degree of excitement displayed by the person making the statements; (2) whether the statement is made at the place where the traumatic event occurred or at another place; (3) the temporal closeness of the statement to the act it explains; and (4) the degree of spontaneity. See *Commonwealth* v. *Hardy*, 47 Mass. App. Ct. 679, 682 (1999).

Here, the victim drove to the Trustys' home immediately following the incident, upset and crying, with "two lumps" on her forehead. Trusty subsequently testified that the victim said that "[s]he had been hit, she had been knocked down and kicked in the head." Before admitting that testimony, the judge carefully noted that he was exercising his discretion, that a "rational mind" could find that the declarant's statement was made under the "stimulus" of the event in question and that no particular time limit is required as long as the stimulus persisted.[5] His resulting decision to admit the testimony was well within the generous ambit of his discretion.

*Judgments affirmed.*

---

[5] " 'The utterance must have been before there has been time to contrive and misrepresent . . . . It is to be observed that the statements need not be strictly contemporaneous with the exciting cause; they may be subsequent to it, provided there has not been time for the exciting influence to lose its sway and to be dissipated . . . . [T]here can be no definite and fixed limit of time. Each case must depend upon its own circumstances.' Wigmore on Evidence (3d ed.) § 1750." *Commonwealth* v. *McLaughlin*, 364 Mass. 211, 223 (1973), quoting from *Rocco* v. *Boston-Leader, Inc.*, 340 Mass. 195, 197 (1960).