SANCHEZ, COMMONWEALTH vs., 100 Mass. App. Ct. 644

 
 COMMONWEALTH vs. ELIAS SANCHEZ.

100 Mass. App. Ct. 644
 September 15, 2021 - January 24, 2022

Court Below: Superior Court, Suffolk County
Present: Vuono, Blake, & Englander, JJ.

 

Homicide. Joint Enterprise. Defense of Others. Jury and Jurors. Constitutional Law, Assistance of counsel, Jury. Due Process of Law, Assistance of counsel. Evidence, Videotape, Joint venturer. Practice, Criminal, New trial, Assistance of counsel, Instructions to jury, Lesser included offense, Jury and jurors.

A Superior Court judge did not abuse his discretion in denying the criminal defendant's motion for a new trial based on the failure of trial counsel to seek admission in evidence of a zoomed-in and slowed-down version of a video recording of the attack, where, given that the video did not support the defendant's theory that the victim's girlfriend accidentally inflicted the fatal stab wounds, the video did not cast doubt on the defendant's guilt, nor would it have accomplished something material for his defense. [648]

A Superior Court judge did not abuse his discretion in denying a criminal defendant's motion for a new trial based on the failure of trial counsel to request an instruction on accident, where, given that the evidence did not support an accident instruction and it was undisputed that the defendant did not inflict the fatal wound, trial counsel's tactical decision was not manifestly unreasonable when it was made. [648-649]

A Superior Court judge did not abuse his discretion in denying a criminal defendant's motion for a new trial based on the failure of trial counsel to request a jury instruction to the effect that if the jury concluded that the Commonwealth failed to disprove that the defendant's codefendant acted in defense of the defendant and therefore acquitted the codefendant on that basis, then the jury also were required to acquit the defendant given that the jury must have found the killing to have been justified, where if the jury had found that the Commonwealth failed to meet its burden to disprove that the codefendant acted in defense of the defendant, it did not mean that the jury found that the killing was justified, or that any other defendants must necessarily be acquitted. [649-651]

At a murder trial, the judge did not err in declining to instruct the jury on the lesser included offense of assault and battery, where the evidence, viewed in the light most favorable to the defendant, did not support his claim that he attacked the victim with anything less than the required intent to commit murder, in that it was evident from a video recording of the attack that the defendant at least intended grievous bodily harm by hitting the victim with a metal baton and inflicted approximately thirty blows in forty seconds, and the autopsy revealed blunt force trauma to numerous parts of the victim's 

 Page 645 

 body including his head. [652-653]

At a criminal trial, the judge did not abuse his discretion in declining to require the Commonwealth to provide a neutral explanation for its peremptory challenge of a juror. [653-656]

INDICTMENT found and returned in the Superior Court Department on January 28, 2014. 

 The case was tried before Jeffrey A. Locke, J., a motion to set aside the verdict was heard by him, and a motion for a new trial, filed on May 16, 2019, was heard by Richard J. Carey, J.

James L. Sultan for the defendant.

 Elisabeth Martino, Assistant District Attorney (Mark D. Zanini, Assistant District Attorney, also present) for the Commonwealth.

 BLAKE, J. Edwin Santos was fatally stabbed in front of Bell's Market in South Boston. The defendant, Elias Sanchez, his son, Angel Sanchez, who was sixteen years old at the time, and his brother, Gabriel Sanchez, were charged with Santos's murder. Following a joint trial in the Superior Court, a jury convicted Elias [Note 1] of murder in the second degree on a theory of joint venture, and acquitted Angel, whom the Commonwealth alleged was the principal, and Gabriel. [Note 2] Elias filed a motion for a new trial claiming that trial counsel was ineffective for failing to introduce a slow-motion version of a surveillance video recording that allegedly supported his theory that the fatal stab wound was accidentally inflicted by Santos's girlfriend, who had intervened in the fight. He also claimed that trial counsel should have requested a jury instruction on accident, and that the judge inform the jury, based on Commonwealth v. Norris, 462 Mass. 131, 143 n.11 (2012), that if they were to acquit Angel based on the theory that he stabbed Santos in defense of Elias, then the killing was justifiable and there could be no murder in which Elias participated. The new trial motion was denied by a different judge (motion judge) following a nonevidentiary hearing. [Note 3] Elias timely appealed.

 Page 646 

 On his direct appeal, Elias claims that the trial judge erred in declining his request to instruct the jury on assault and battery as a lesser included offense of murder, and in failing to require the Commonwealth to explain its peremptory challenge of a Hispanic prospective juror. On his appeal from the denial of his motion for a new trial, which was consolidated with his direct appeal, Elias claims that he received the ineffective assistance of counsel. We affirm.

 Background. 1. The Commonwealth's case. We recite the relevant facts that the jury could have found, reserving certain facts for later discussion. On November 17, 2013, just before 5 p.m., a fight broke out among Elias, Gabriel, and Santos. The fight occurred on the sidewalk just outside of the apartment building where Santos's girlfriend, Jessica Montanez, and their children lived. Montanez saw the men fighting from a window, and came outside to try to break it up. Once outside, Montanez saw only Gabriel; Elias and Santos had left the area. Montanez went to look for Santos. She found him a short distance away in front of Bell's Market.

 As Santos and Montanez began walking back in the direction of the apartment building, they were approached by Elias and Angel. Elias repeatedly hit Santos with an expandable baton. After Santos turned toward Elias and raised his hand, Angel ran toward the two of them and then repeatedly stabbed Santos, while Elias continued to beat Santos with the baton. As Elias and Angel struggled with Santos, Gabriel ran toward the group and repeatedly punched Santos. Montanez tried unsuccessfully to protect Santos. She pulled a knife from Santos's jacket, and tried to stab the defendants. During the fight, Montanez dropped the knife; as she tried to retrieve it, Gabriel pushed her, picked up the knife, and ran off. Elias and Angel continued to attack Santos briefly before they ran away. In all, Angel stabbed Santos eighteen times. Santos stumbled into the market and collapsed. The entire episode lasted less than one minute, and was captured on the market's video surveillance cameras from various angles. The surveillance videos were played for the jury multiple times.

 When emergency personnel arrived, Santos was in cardiac arrest, had no pulse, and was not breathing. He died soon thereafter. An autopsy revealed that Santos had sustained eighteen stab wounds to his back, shoulders, chest, head, and face. He also had blunt force injuries all over his body, including multiple blunt force injuries to his head. The medical examiner opined that the wounds to Santos's sternum and lungs were the fatal wounds. 

 Page 647 

 2. The defense. Elias did not testify at trial. Through cross-examination and argument, he claimed that he acted in self-defense. He emphasized that Santos was the aggressor, and solicited testimony from Montanez that she previously had obtained an abuse prevention order against Santos, Santos had previously been incarcerated for gun related offenses, and Santos had prior altercations with Elias before the night he died. 

 Elias also argued that his capacity to intend to kill was diminished due to posttraumatic stress disorder (PTSD); he presented expert testimony from Dr. Eric Brown, a clinical and forensic psychologist, in support of this theory. Dr. Brown testified that he met with Elias four times, and reviewed medical and psychiatric records. He concluded that Elias suffered from PTSD, panic disorder with agoraphobia, and major depressive disorder. Dr. Brown testified, in part, that Elias was "in a state of paranoia and having a history of paranoia, [Elias] w[as] very likely to . . . be in fear of being attacked, harmed and killed . . . ." He opined that Elias "had [a] diminished capacity which left him unable to form any kind of conscious and clear intent to harm . . . Santos." Finally, Elias argued that he caused Santos only "superficial injuries."

 As noted, the Commonwealth's theory of the case was that Angel was the principal, and that he had inflicted the fatal stab wound. Angel claimed that he acted in defense of his father (Elias), and also argued that he lacked the requisite intent for murder. In support of the latter theory, Angel called Dr. Robert Kinscherff, who testified about adolescent brain development to support his claim that Angel did not act with the requisite intent or knowledge. Angel also called Dr. Frank DiCataldo, who opined that "Angel had vulnerabilities, deficits in his ability to manage his emotions and behavior, particularly when under stress, a hot situation, compared to other similar-aged adolescents." [Note 4]

 Discussion. 1. Motion for new trial. We review the denial of a motion for a new trial for a significant error of law or abuse of discretion. See Commonwealth v. Wilson, 486 Mass. 328, 334 (2020). To prevail on a claim of ineffective assistance of counsel, "the defendant must show that the behavior of counsel fell measurably below that of an ordinary, fallible lawyer and that 

 Page 648 

such failing 'likely deprived the defendant of an otherwise available, substantial ground of defence.'" Commonwealth v. Prado, 94 Mass. App. Ct. 253, 255 (2018), quoting Commonwealth v. Saferian, 366 Mass. 89, 96 (1974).

 a. The surveillance video. Elias first claims that trial counsel was ineffective for failing to seek to admit in evidence a zoomed-in and slowed-down version of the video of the attack. He claims that the video raised a reasonable possibility that Montanez accidently inflicted the fatal stab wounds. [Note 5] The Commonwealth played the video for the jury, frame by frame, during its case in chief, and assured the trial judge that the jurors could slow it down during their deliberations, if they chose to do so. The surveillance video was also played multiple times for the jury by others. For example, Gabriel's attorney played and paused the video during an expert witness's testimony, and he played a slowed-down version of the video during his closing argument.

 Having viewed the video ourselves, we agree with the motion judge's conclusion that the video does not support Elias's theory that Montanez inflicted the fatal stab wound. [Note 6] As a result, the video did not cast doubt on Elias's guilt, nor would it have accomplished something material for his defense. In fact, the video depicts Angel, wearing a black glove, repeatedly stabbing Santos in the chest with a knife. This was corroborated by a still photograph introduced at trial that showed a black, gloved hand thrust a knife toward the Santos's chest. [Note 7] Upon repeated viewings of the video recording, we conclude that Montanez's movements and position do not show that she inflicted the fatal stab wound -- accidentally or otherwise. [Note 8] The motion judge did not abuse his discretion in denying Elias's motion on this ground.

 b. Accident defense. Elias next contends that trial counsel was ineffective for failing to request an instruction on accident. As noted, the Commonwealth argued that the defendants acted together, and that Angel inflicted the fatal stab wounds. The defendants

 Page 649 

 claimed, as relevant here, that Santos was the primary aggressor and that each acted in self-defense or defense of another. No one argued that Montanez accidentally killed Santos. In addition, trial counsel argued that Elias lacked the requisite mental capacity to form the intent to murder. If accepted by the jury, either of these defenses would negate malice, an element of murder. See Connolly v. Commonwealth, 377 Mass. 527, 529 (1979) ("malice is an essential element of murder, and a proper exercise of self-defense negates malice"). 

 Here, the motion judge did not abuse his discretion in finding that the evidence did not support an accident instruction. It was undisputed that Elias did not inflict the fatal wound. And, as discussed supra, the possibility that Montanez -- and not Angel -- fatally stabbed Santos was belied by the evidence, including the surveillance video. In addition, Dr. Elizabeth LaPosata, a forensic pathologist, testified that she had reviewed the medical examiner's file and watched the surveillance video; she opined that the fatal wound was caused by Angel's stab to Santos's sternum, which hit the pulmonary artery.

 Moreover, a defense based on accident stems from the unintended consequences of a defendant's act, not the acts of a third party. See Commonwealth v. Figueroa, 56 Mass. App. Ct. 641, 648 (2002) ("[T]he term 'accident' is a label for the unintended consequences of a defendant's act. . . . Accidental events are unexpected happenings that occur[] without intention or design on the defendant's part. [They are] sudden unexpected events that take[] place without the defendant's intending [them]" [quotation and citation omitted]). In this case, the defense focused on the intent of each of the three defendants, and not the identity of the person who inflicted the fatal injuries. Whether or not Montanez caused one of the eighteen stab wounds was irrelevant to Elias's intent. Under all of these circumstances, trial counsel's tactical decision was not manifestly unreasonable when it was made. See Commonwealth v. Kolenovic, 471 Mass. 664, 674 (2015). 

 c. Justification instruction. Elias next claims that trial counsel was ineffective for failing to request a jury instruction to the effect that if the jury concluded that the Commonwealth failed to disprove that Angel acted in defense of another (Elias) and therefore acquitted Angel on that basis, then the jury also were required to acquit Elias because the jury must have found the killing to be justified. Elias bases this claim upon a footnote in 

 Page 650 

Norris, 462 Mass. at 143 n.11, which is set forth in the margin. [Note 9] For the reasons that follow, we conclude that the instruction was not warranted. 

 To begin, Elias has not cited any Massachusetts case -- nor have we found one -- that holds that such an instruction is appropriate, let alone required. Moreover, the footnote in Norris does not say what Elias suggests. Norris involved a shooting, where the principal (Norris) and another actor (Facey) were tried on a joint venture theory. Norris argued that he had acted in self-defense. Norris, 462 Mass. at 137, 143. The footnote appears in a section of the court's opinion that rejects an argument that the defendants' trial counsel also should have requested an instruction on defense of another. See id. at 139-144. In rejecting that argument, the court merely pointed out that Norris's theory of self-defense, if accepted by the jury, "should" have also resulted in an acquittal of Facey. Id. at 143. The statement, and the footnote, do not state that Facey's acquittal would have been required. See id. at 143 n.11. Moreover, such would not have followed as a matter of logic, because even assuming the jury had acquitted Norris, the most that could be said was that the Commonwealth failed to disprove self-defense beyond a reasonable doubt. Put another way, if in this case the jury found that the Commonwealth failed to meet its burden to disprove that Angel acted in defense of another, it does not mean that the jury found that the killing was justified, or that any other defendants must "necessarily" be acquitted.

 As the motion judge observed, the reason for the jury's acquittal of Angel is unknown because, by agreement, the jury were given a general verdict slip. Our cases require a special verdict

 Page 651 

 slip only if multiple theories are presented by the Commonwealth. See Commonwealth v. Shea, 460 Mass. 163, 175-176 (2011) (verdict slip need not identify theory on which jury found defendant guilty where only one theory is presented as there is no chance of ambiguity). See also Commonwealth v. Accetta, 422 Mass. 642, 646-647 (1996) (specific unanimity and special verdict form required where multiple theories of manslaughter charged). Accordingly, any conclusions about the jury's acquittal of Angel are based on pure speculation. For example, jurors could have credited the evidence that Angel acted impulsively to defend Elias, or credited Dr. Kinscherff's testimony that Angel's reasoning and ability to understand the consequences of his actions were impacted by his lack of maturity, or some combination of those theories. All that may be inferred from Angel's acquittal is that the jury did not unanimously find him guilty beyond a reasonable doubt of the crime with which he was charged. Cf. Commonwealth v. Zanetti, 454 Mass. 449, 460-461 (2009). And when evidence of a principal's state of mind could support a finding that he lacked the necessary criminal intent, his joint venturer is not entitled to an acquittal without such an impairment. See Commonwealth v. McGrath, 358 Mass. 314, 321 (1970) ("No man can shield himself from liability for his wrongful acts on the ground that the person who assisted in carrying out and executing his wrongful purpose, or the wrongful purpose of himself and others, was a person of unsound mind" [citation omitted]). [Note 10]

 The motion judge did not abuse his discretion in denying Elias's motion for a new trial on this ground, as trial counsel's failure to request an instruction based upon Norris, 462 Mass. at 143 n.11, was not "behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer." Commonwealth v. Sin, 100 Mass. App. Ct. 172, 177-178 (2021), quoting Commonwealth v. Phinney, 446 Mass. 155, 162 (2006), S.C., 448 Mass. 621 (2007).

 Page 652 

 2. Direct appeal. a. Absence of assault and battery instruction. Elias claims that the trial judge erred by failing to instruct the jury on assault and battery, a lesser included offense of murder, because there was a rational basis for acquitting him of murder and convicting him of assault and battery. Because Elias objected to the lack of this instruction at trial, the issue is preserved, and we therefore review for prejudicial error. See Commonwealth v. Teixeira, 486 Mass. 617, 622 (2021). See also Commonwealth v. Flebotte, 417 Mass. 348, 353 (1994). 

 It is undisputed that assault and battery is a lesser included offense of murder. See Commonwealth v. Miller, 457 Mass. 69, 81 (2010). However, Elias's entitlement to this instruction depends on the existence of evidence, viewed in the light most favorable to him, that puts in dispute an element of the greater, charged crime that is not an element of the lesser included offense. See Commonwealth v. Porro, 458 Mass. 526, 536 (2010). Here, the additional elements are death and the intent to commit murder; as to murder in the second degree, the jury were instructed that they must find that Elias (either himself or as part of a joint venture) intended to kill Santos, or intended to cause "grievous bodily harm." The evidence, viewed in the light most favorable to Elias, does not support his claim that he attacked Santos with anything less than the required intent to commit murder. From the video, it is evident that Elias at least intended "grievous bodily harm" -- armed with a [metal] baton, Elias attacked Santos and repeatedly hit him. Those beatings continued after Angel joined in and repeatedly stabbed Santos, and even after Santos was lying on the ground. In all, Elias inflicted approximately thirty blows in forty seconds; the autopsy revealed blunt force trauma to numerous parts of Santos's body, including his head. [Note 11] "Where the evidence provides . . . no rational basis for acquitting the defendant of the crime charged and convicting him of the lesser included offense, the lesser included instruction is not necessary" (quotation and citation omitted). Commonwealth

 Page 653 

 v. Gallett, 481 Mass. 662, 679-680 (2019). [Note 12]

 Elias's reliance on Commonwealth v. Gilliard, 36 Mass. App. Ct. 183, 189-192 (1994), S.C., 46 Mass. App. Ct. 348, 350-352 (1999), is misplaced. Gilliard involved a multiperson fight that resulted in the victim's death, but with no direct evidence of who stabbed the victim. The defendant's role was unclear from the evidence. See id. at 349, 351-352. By contrast, here Elias beat Santos to the ground with a [metal] baton even as Angel repeatedly stabbed him. Indeed, under the circumstances of this case, the blows that Elias inflicted with the baton were not separate from the stab wounds that were simultaneously inflicted by Angel; in other words, "they merged together in the attack that killed [Santos]." Miller, 457 Mass. at 81.

 b. Peremptory challenge. During empanelment, the trial judge told prospective jurors that the defendants were Hispanic, and asked, among other things, whether that fact would affect their ability to be fair and impartial. After a voir dire of juror number 121, a Hispanic woman, the trial judge asked the parties whether they were challenging the juror for cause; none of the attorneys did. The Commonwealth then exercised a peremptory challenge. Elias's trial counsel objected. He claimed that the challenge was discriminatory because the juror was Hispanic like Elias and the other defendants, only one Hispanic juror had been seated, and he did not see any other potential jurors that were Hispanic. The trial judge did not find a pattern that suggested an improperly exercised challenge. On appeal, Elias argues that the trial judge erred in failing to require the Commonwealth to provide a neutral explanation for its peremptory challenge. We review for an abuse of discretion. [Note 13] See Commonwealth v. Lopes, 478 Mass. 593, 599 (2018), citing Commonwealth v. Jones, 477 Mass. 307, 320 (2017). 

 Page 654 

 "The Fourteenth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights prohibit a party from exercising a peremptory challenge on the basis of race." Commonwealth v. Sanchez, 485 Mass. 491, 493 (2020), quoting Jones, 477 Mass. at 319. "Peremptory challenges are presumed to be proper." Commonwealth v. Scott, 463 Mass. 561, 570 (2012). However, when the defendant makes a Batson-Soares objection, [Note 14] it "triggers a three-step process." Commonwealth v. Henderson, 486 Mass. 296, 311 (2020). First, the defendant bears the burden of rebutting the presumption that the peremptory challenge was proper. See Commonwealth v. Jackson, 486 Mass. 763, 768 (2021). To do so, he "'must make out a prima facie case' that [the challenge] was impermissibly based on race or other protected status 'by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose.'" Id., quoting Johnson v. California, 545 U.S. 162, 168 (2005). Second, if such a showing is made, "the burden shifts to the party exercising the challenge to provide a 'group-neutral' explanation for it." Jackson, supra, quoting Sanchez, supra at 493. "Third and finally, the judge must then determine whether the explanation is both 'adequate' and 'genuine'" (quotation and citation omitted). Jackson, supra. 

 Elias's initial "burden of making the requisite prima facie showing is not a terribly weighty one" (quotation and citation omitted). Henderson, 486 Mass. at 311. 

 "In the course of determining whether an inference of discriminatory purpose is warranted with respect to a challenged juror, judges should consider, among any other relevant factors, (1) the number and percentage of group members who have been excluded from jury service due to the exercise of a peremptory challenge; (2) any evidence of 

 Page 655 

disparate questioning or investigation of prospective jurors; (3) any similarities and differences between excluded jurors and those, not members of the protected group, who have not been challenged (for example, age, educational level, occupation, or previous interactions with the criminal justice system); (4) whether the defendant or the victim are members of the same protected group; and (5) the composition of the seated jury" (footnotes omitted). 

Jackson, 486 Mass. at 773, quoting Sanchez, 485 Mass. at 512. This list is "neither mandatory nor exhaustive." Jackson, supra, quoting Sanchez, supra at 513. Both "a trial judge and a reviewing court must consider all relevant circumstances for each challenged strike" (quotation and citation omitted). Jackson, supra. 

 A single challenge may be sufficient to establish a prima facie case of impropriety. See Commonwealth v. Issa, 466 Mass. 1, 8 (2013). But the cases in which the defendant made a prima facie showing at the first stage involved facts markedly different from those presented here. See, e.g., Commonwealth v. Carter, 488 Mass. 191, 198-200 (2021) (prima facie case established where Commonwealth exercised five out of nineteen challenges against prospective African Americans jurors, and juror shared same race and age as defendants); Commonwealth v. Carvalho, 88 Mass. App. Ct. 840, 842-843 (2016) (exercise of peremptory challenge of only minority juror sufficient to find prima facie showing of impropriety). Here, thirty-two potential jurors had been questioned on the first day of empanelment. Of them, eleven were found indifferent and three of the eleven were Hispanic. In total, five Hispanic potential jurors were questioned, and three were found indifferent. Of the three, one was seated without objection, and Elias exercised a peremptory challenge to another before the Commonwealth exercised the challenge at issue here. Given these circumstances, we conclude the trial judge did not abuse his discretion in failing to require the Commonwealth to provide a neutral explanation for its peremptory challenge. Compare Jackson, 486 Mass. at 774-776 (Commonwealth's peremptory challenge upheld where two of thirteen empaneled jurors were Hispanic, and Commonwealth struck three "[o]ut of . . . five potential 'indifferent' Hispanic jurors . . . representing a strike rate of sixty percent"). Despite the defendant's arguments to the contrary, the numbers here were "not as dramatic or glaring as [those] in other 

 Page 656 

cases where the raw numbers and percentages have been dispositive in raising a step one inference" (quotation omitted). Jackson, supra at 774.

Conclusion. The judgment of conviction is affirmed. The orders denying the defendant's motions for postconviction relief, entered May 4, 2018, and February 14, 2020, respectively, are also affirmed.

So ordered.

FOOTNOTES
[Note 1] To avoid confusion, we refer to those who share a surname by their first names. 

[Note 2] While his appeal was pending, Elias filed a motion to set aside the verdict pursuant to Mass. R. Crim. P. 25 (b) (2), as amended, 420 Mass. 1502 (1995), which was denied by the trial judge. On appeal, he makes no separate argument with respect to the denial of the motion. 

[Note 3] By the time the new trial motion was filed, a conflict had arisen, and the trial judge recused himself. 

[Note 4] Dr. DiCataldo testified that a hot situation is "[a] situation that is highly emotionally arousing where an individual may feel fear, they may feel -- their emotions are p[iqu]ed, and their controls are less secure." 

[Note 5] Elias acknowledges that the quality of the video was poor and would have required "repeated viewings." 

[Note 6] Where the motion judge was not the trial judge, we are "in as good a position as the motion judge" to assess the video. Commonwealth v. Brescia, 471 Mass. 381, 388 (2015), quoting Commonwealth v. Wright, 469 Mass. 447, 461 (2014). 

[Note 7] Additional photographs attached to Elias's motion for a new trial demonstrate the same. 

[Note 8] It was undisputed that Angel was wearing black gloves, and Montanez was not. 

[Note 9] Footnote 11 provides: 

"In order to convict Facey of murder as a joint venturer, the jury would have to find that Facey had participated in a murder with Norris, the principal. See Commonwealth v. Zanetti, 454 Mass. 449, 468 (2009). If Norris had succeeded on his claim of self-defense, Facey necessarily would have been acquitted of the murder charge because Norris would only have committed a justified killing, and there would be no murder in which Facey could have participated. See Commonwealth v. Rogers, 459 Mass. 249, 270, cert. denied, [565 U.S. 1080] (2011) ('if the defendant engaged in the proper exercise of self-defense, there can be no verdict of murder'). The same would be true with respect to a successful theory of defense of another."

Norris, 462 Mass. at 143 n.11.

[Note 10] Although Elias denies that his argument is based on a theory of inconsistent verdicts, we note that inconsistent verdicts cannot have any effect on the evaluation of trial counsel's performance, as inconsistent verdicts in joint venture cases do not render any one verdict infirm as a matter of law. See Commonwealth v. Robinson, 48 Mass. App. Ct. 329, 340-341 (1999). In any event, there was sufficient evidence here for the jury to find the defendant guilty of murder in the second degree, and therefore the conviction is "consonant with justice." Commonwealth v. Woodward, 427 Mass. 659, 666 (1998). 

[Note 11] The medical examiner described the blunt force injuries to Santos in some detail. She described blunt force trauma to Santos's head that included bleeding underneath the scalp, a partial thickness laceration to the forehead with hemorrhaging, bruising and abrasions to Santos's hands, back, and shoulder, and four "multiple combined . . . abrasions" on the torso with deep hemorrhaging in the tissues. Photographs depicting all of the injuries to Santos were admitted into evidence. 

[Note 12] Elias's argument that an assault and battery instruction was required because there was no evidence that he used a knife or knew that Angel had a knife is unavailing as the Commonwealth was not required to prove that Elias knew Angel was armed. See Commonwealth v. Britt, 465 Mass. 87, 100 (2013) ("The Commonwealth should only bear the burden of proving that a joint venturer had knowledge that a member of the joint venture had a weapon where the conviction on a joint venture theory is for a crime that has use or possession of a weapon as an element"). Moreover, murder does not require the use of a weapon. See id. 

[Note 13] At the time of trial, a defendant satisfied his burden of rebutting the presumption that a peremptory challenge is proper "by showing that (1) there is a pattern of excluding members of a discrete group and (2) it is likely that individuals are being excluded solely on the basis of their membership in that group" (quotation and citation omitted). Commonwealth v. Scott, 463 Mass. 561, 570 (2012). Recently, and after this trial, the Supreme Judicial Court retired the "pattern" language. See Commonwealth v. Sanchez, 485 Mass. 491, 511 (2020) ("the presumption of propriety is rebutted when the totality of the relevant facts gives rise to an inference of discriminatory purpose" [quotation and citation omitted]). Even under this new standard, we conclude that the judge did not abuse his discretion in not requiring the Commonwealth to provide a race-neutral reason for its challenge. 

[Note 14] See Batson v. Kentucky, 476 U.S. 79 (1986); Commonwealth v. Soares, 377 Mass. 461, cert. denied, 444 U.S. 881 (1979). 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.